# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**LEROY FERRELL, as Executor
de son Tort of the Estate of
LARIAN FERRELL, and on behalf
of survivors LEROY FERRELL
and JULIE FERRELL,**

    **Plaintiff,**

**vs.**                          **Case No. 4:21cv397-WS-MAF**

**FLORIDA DEPARTMENT OF
CORRECTIONS, RICKY D. DIXON,[1] in
his official capacity as SECRETARY
JOHN DOES 1-5, MILTON HICKS, in
his individual capacity, and
CENTURION OF FLORIDA, LLC,
a health services Corporation,**

    **Defendants.**

_____/

## SECOND REPORT AND RECOMMENDATION[2]

---

[1] The complaint was brought against Mark Inch in his official capacity as Secretary of the Florida Department of Corrections.  ECF No. 5 at 1.  Because Mr. Inch is no longer in that position, current Secretary Ricky D. Dixon is automatically substituted as a Defendant pursuant to Rule 25(d).

[2] The first Report and Recommendation, ECF No. 21, concerned Plaintiff's motion to remand this case to state court, ECF No. 13.  The recommendation to deny that motion was adopted.  ECF Nos. 21, 25.

After removing this case to federal court, ECF No. 1, Defendant Centurion of Florida, LLC (hereinafter "Centurion") filed a motion to dismiss, ECF No. 9, the complaint, ECF No. 5.  Plaintiff filed a response in opposition to the motion, ECF No. 15.  This case has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2(C) and the motion is ready for a ruling.[3]

**Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A complaint's well-pleaded factual allegations are accepted as true, but "conclusory allegations" unsupported by facts are "not entitled to an assumption of truth."  Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010).  A complaint must allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" to support a plaintiff's claims.

---

[3] An amended motion to dismiss, ECF No. 19, was also filed by the Department of Corrections, the Secretary, Defendant Hicks, and the John Doe Defendants.  That motion will be addressed in a separate Report and Recommendation.

Case No. 4:21cv397-WS-MAF

Twombly, 550 U.S. at 556 (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" Ashcroft, 129 S. Ct. at 1949 (citing Twombly, 127 S. Ct. at 1965). A complaint does not need detailed factual allegations; however, pleadings which contain "no more than conclusions" are "not entitled to the assumption of truth." Ashcroft, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." 129 S. Ct. at 1950. A complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" 129 S. Ct. at 1949 (citing Twombly, 127 S. Ct. at 1965).

**Allegations of the Complaint**

Following the death of their son Larian Ferrell, his estate's personal representatives, Leroy and Julie Ferrell, filed this action alleging deliberate indifference and wrongful death. ECF No. 5 at 2. Mr. Ferrell had been incarcerated at Cross City Correctional Institution when he was fatally attacked by another inmate. *Id.* at 3. On May 18, 2019, Mr. Ferrell died "as a result of stab wounds to the stomach." *Id.*

The complaint asserts that Mr. Ferrell was attacked "due to the correctional facility being understaffed and as a result of the lack of policies and procedures and security in place to protect the inmates." *Id.* at 3. Additionally, as it pertains to the claims brought against Centurion, it is alleged that medical staff "did not respond in a timely manner" and did not initiate "lifesaving protocols." *Id.* at 4. Further, the complaint states that Mr. Ferrell's "life could have been saved" if a policy had required that "appropriate medical kits, equipment and devices" be placed in each dormitory. *Id.* at 6. Plaintiff contends that "FDOC and Centurion cooperated in a policy to short-staff medical personnel positions such that there was not a fully, adequate and or competent medical staff at the prison facilities, including Cross City Correctional Institution on the day of the incident." *Id.* Moreover, it is claimed that "Mr. Ferrell's life could have been saved if the officer, medical staff and supervisor had acted reasonably in response to the known serious medical condition that cost Mr. Ferrell his life." *Id.* at 8.

Plaintiff names the Florida Department of Corrections, the Secretary of the Department, Warden Milton Hicks, Centurion, and John Does 1-5 as Defendants. *Id.* at 2-3. As it pertains to the instant motion to dismiss,

Count IV of the complaint raises a deliberate indifference claim against Centurion pursuant to 42 U.S.C. § 1983.  *Id.* at 14-17.  It is asserted that Centurion "acted with deliberate indifference in the failure to implement" policies "regarding the response time for inmate medical treatment for incidents" such as occurred with Mr. Ferrell, and "regarding the availability of medical kits and/or devices in dorms in the event of medical emergencies."  *Id.* at 16-17.  In the alternative,[4] the complaint asserts a claim against Centurion under the Florida Wrongful Death Act, Fla. Stat. § 768.16, *et seq*.  *Id.* at 21-25.

## ANALYSIS

### 1.    Wrongful Death Claim

Centurion asserts that Plaintiff's state law "wrongful death claim is barred two reasons: (1) Plaintiff failed to comply with the Florida Medical Malpractice Act's presuit requirements, and (2) Centurion has sovereign immunity."  ECF No. 9 at 18.  Centurion argues that Plaintiff's wrongful death claim arises out of the alleged failure to render medical care in light

---

[4] Federal Rule of Civil Procedure 8(d) "expressly permits the pleading of alternative and inconsistent claims."  Savage v. Secure First Credit Union, 2016 WL 2997171, at *1 (11th Cir. May 25, 2016) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1273 (11th Cir. 2009)).

of the allegation that Centurion breached its "duty to provide non-negligent medical care and treatment to inmates, including Decedent Mr. Ferrell." *Id.*; *see* ECF No. 5 at 21-22.  Thus, Centurion asserts that this "is properly classified as a medical malpractice claim."  *Id.* at 19.  To bring such a claim, Plaintiff had to comply with the pre-suit notice and screening requirements which, Centurion says, did not happen.  *Id.* at 20.

Next, Centurion argues that Plaintiff's wrongful death claim "must be dismissed because Centurion has immunity under § 768.28, Florida Statutes."  ECF No. 9 at 20-21.  Centurion points out that pursuant to § 768.28(10)(a), health care providers working under contract for the Department of Corrections are agents of the state.  *Id.* at 21.  Thus, as an agent, Centurion has immunity because "there is no allegation as it relates to the wrongful death claim that Centurion or anyone else acted in bad faith."  *Id.* at 22.

In response, Plaintiff argues that the Florida Medical Malpractice Act is inapplicable to this case "because liability is not predicated on the application of medical skills or knowledge."  ECF No. 15 at 14-15.  Plaintiff states that the "claims sound in ordinary negligence, not medical malpractice," and that Centurion was indifferent in failing to provide care

"based on lay standards." *Id.* at 14.  Plaintiff points out that "[n]o medical professional judgment or skill is at issue to determine liability."  *Id.*

Plaintiff also contends that Centurion is not immune from liability under § 768.28.  *Id.* at 15.  Plaintiff argues that it is inappropriate to determine at the motion to dismiss stage of litigation whether or not Centurion is "an agent" of the State such that it has immunity, and that consideration of Centurion's submission of its contract with the DOC is impermissible in ruling on a motion to dismiss.  *Id.* at 15.  Plaintiff argues that a determination of whether or not Centurion is an agent of the state is a question of fact, and that the "nature of the relationship controls over the label."  *Id.* at 15-16.

As noted above, when ruling on a motion to dismiss, the allegations of a complaint are accepted as true.  Plaintiff alleged that Centurion "was a health services corporation contracting with the Florida Department of Corrections to provide comprehensive medical services to inmates housed at Cross City Correctional Institution."  ECF No. 5 at 2.  That allegation provides a sufficient basis to find that Centurion had a contractual relationship with the DOC and it is unnecessary to review the specifics of the contract.  *See* Biddle v. Prison Health Servs., Inc., No. 09-20391-CV,

2010 WL 11553188, at *1 (S.D. Fla. Mar. 18, 2010) (finding PHS was a contracting agent as PHS did not dispute that it "was a contracting agent," and the complaint alleged that PHS was "a comprehensive health care provider that contracted with the State of Florida to provide comprehensive medical services ...."). Although Plaintiff argues that Centurion's agency status should not be determined at this time, the allegations of the complaint are sufficient to support that finding. Moreover, Centurion has acknowledged that it had a "contract providing that it is FDC's agent" and was "acting within the course and scope of its contract when providing healthcare to Mr. Ferrell." ECF No. 9 at 21.

Plaintiff also argues that agency status under § 768.28 is a question of fact, ECF No. 15 at 15, that cannot be decided on a motion to dismiss. Plaintiff cites to Obremski v. Armor Corr. Health Servs., Inc., 467 F. Supp. 3d 1265, 1279 (S.D. Fla. 2020), for the proposition that the degree of control exercised by the state agency over the agent is material to this issue and requires consideration of the terms of the contract. ECF No. 15 at 15.

In Ombremski, the court was confronted with conflicting facts and an ambiguous contract when ruling on a summary judgment motion, and left

the question of agency status to be decided by a jury.  Obremski, 467 F. Supp. 3d at 1281.  That decision is distinguishable.

First, there was no discussion of § 768.28(10)(a) which considers health care providers to be "agents of the State of Florida" when they have "contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system." FLA. STAT. § 768.28(10)(a).  Indeed, that issue was immaterial to the Ombremski case as the decedent detainee had been housed at the Broward County Jail, not the Department of Corrections.  Obremski, 467 F. Supp. 3d at 1269.  "None of the Broward Detention Facilities are part of the 'state correctional system.'"  Coley v. Wexford Health Sources, Inc., No. 06-61239-CIV, 2006 WL 8431534, at *3 (S.D. Fla. Nov. 17, 2006).

Second, the important consideration is whether a health care provider has contractually agreed to provide health care services for the Department's inmates.  By agreeing to do so, the provider is necessarily agreeing to act as an agent for purposes of providing medical care to inmates in fulfillment of the State's obligation under the Constitution.  It is not necessary to review the contract itself, especially when the complaint alleges the existence of the contractual relationship.  Biddle, 2010 WL

11553188, at *1 (declining to review the contract submitted with a motion to dismiss, and finding it unnecessary to convert the motion to dismiss into a summary judgment motion).

Third, § 768.28 provides: "Health care providers or vendors, or any of their employees or agents, that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State of Florida, Department of Corrections, for the purposes of this section, while acting within the scope of and pursuant to guidelines established in said contract or by rule." FLA. STAT. § 768.28(10)(a). Accordingly, Plaintiff's allegations, accepted as true, reveal that Centurion had a contract to provide health care services to inmates such as Mr. Ferrell at Cross City Correctional Institution,[5] and pursuant to § 768.28(10)(a), Centurion should be deemed to act as an agent for the Department of Corrections.

---

[5] At least one court has declined to consider whether a defendant is an "agent" under § 768.28 at the motion to dismiss stage of the proceedings. *See* Nelson v. Gualtieri, No. 8:19-CV-449-T-36JSS, 2020 WL 1158712, at *8 (M.D. Fla. Mar. 10, 2020) (declining to consider that issue on the basis that evaluation would require examination of "the contract between the DOC and Corizon, which is outside of the four corners of the Third Amended Complaint"). Here, the complaint alleged a contractual relationship; there is no indication in Nelson of such an allegation. Furthermore, the court was confronted with the filing of a joint motion to dismiss or, in the alternative, a motion for summary judgment. The court "decline[d] to treat the motion to dismiss as a motion for summary judgment." Nelson, 2020 WL 1158712, at *3.

Moreover, in bringing a § 1983 claim against Centurion, that claim is based on Plaintiff's allegation that Centurion "had a duty under the Constitution of the United States of America to medically treat inmates and provide adequate medical care to those inmates, including Decedent Mr. Ferrell, in the custody of Cross City Correctional Institution."  ECF No. 5 at 14.  State and local governments "have an obligation to provide medical care to incarcerated individuals."  Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 705 (11th Cir. 1985) (citing Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  When that obligation is carried out through a private entity, "state action is present" and the entity is "subject to liability under 42 U.S.C. § 1983."  Ancata, 769 F.2d at 703 (11th Cir. 1985); see also Andrews v. Marshall, 845 F. App'x 849, 857-58 (11th Cir. 2021) (stating that a "private entity like Corizon Health can be subject to liability under § 1983 when it 'performs a function traditionally within the exclusive prerogative of the state.'") (quoting Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th Cir. 2011).  Centurion, as a private entity that is alleged to have contracted with the Florida Department of Corrections to provide medical care to inmates, and which acknowledges that contractual obligation in its motion to dismiss, is a "state actor" for purposes of § 1983 claims.  See

Brennan v. Headley, 807 F. App'x 927, 937 (11th Cir. 2020) (holding that in providing medical services to inmates, Corizon had liability under § 1983).

Having concluded that Centurion is an agent of the State, it must be considered whether Plaintiff's Wrongful Death Act claim can proceed.  The applicable statute, FLA. STAT. § 768.28 (9)(a), as is relevant to this issue, provides:

> "An officer, employee, or agent of the state . . . may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . .  The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property...."

FLA. STAT. § 768.28 (9)(a).

The Wrongful Death Act, FLA. STAT. § 768.16, is a tort under Florida

law.[6]  "Under Section 768.28(9)(a), an officer, employee, or agent of the

state may not be held personally liable for conduct in the scope of his or

her employment or function unless he or she 'acted in bad faith or with

malicious purpose or in a manner exhibiting wanton and willful disregard of

human rights, safety, or property.'"  Harris v. Debellis, 658 F. App'x 940,

943 (11th Cir. 2016) (quoting Fla. Stat. § 768.28(9)(a)); *see also* Turner v.

Phillips, No. 5:19CV140-TKW-MJF, 2021 WL 3026965, at *16 (N.D. Fla.

June 21, 2021) (relying on § 768.28(9)(a) to find the defendants were

entitled to summary judgment on the plaintiff's "wrongful death claim unless

there [was] evidence from which a reasonable jury could find that they

acted in bad faith or with malicious purpose or in a manner exhibiting

wanton and willful disregard").

Here, Plaintiff's complaint is devoid of any allegations of "bad faith," a

malicious purpose, or wanton and willful disregard.  ECF No. 5 at 21-23.

Rather, Plaintiff alleged that Centurion failed to hire competent medical

staff, failed to assign qualified staff to treat Mr. Ferrell, failed to provide

adequate training and appropriately supervise its employees, failed to

---

[6] Torts are listed in Chapters 766 - 774 of the Florida Statutes.

Case No. 4:21cv397-WS-MAF

ensure its employee had reasonable knowledge in treating head injuries, were familiar with DOC' policies and procedures, failed to implement appropriate policies for emergency medical care, for having a doctor in the infirmary or when to call a doctor, and failed to have its employees located within a reasonable distance from dormitories. *Id.* at 22-23. Plaintiff further alleged that Centurion discouraged using "necessary and appropriate medical care, tests, services," failed to ensure that medical kits, CPRs, external defibrillators, and functional medical equipment were available in the dormitories, failed to respond in a timely manner, failed to properly treat Mr. Ferrell, and was "careless and negligent" in other ways to "be identified during the course of discovery and/or trial." *Id.* at 23. Furthermore, it has not gone unnoticed that in responding to the motion to dismiss, Plaintiff reiterated that this claim is based on "ordinary negligence." ECF No. 15 at 14.

Because the complaint does not allege acts of bad faith, malicious purpose, or the wanton and willful disregard of human rights or safety, Centurion cannot be held liable on the wrongful death claim and is entitled

to sovereign immunity.[7]  In light of this conclusion, there is no need to

evaluate whether or not Plaintiff had to comply with the Florida Medical

Malpractice Act's presuit notice and screening requirements.

**2.    Shotgun Pleading**

Centurion contends that the complaint "is a shotgun pleading that

should be dismissed without prejudice."  ECF No. 9 at 7.  Centurion states

it is "in doubt about what allegations support the claims against it" because

the complaint "is premised on conclusory allegations."  *Id.* at 8.

Additionally, Centurion expresses confusion because the complaint, at

times, alleges that "Defendants" collectively took some action and

Centurion is unclear whether those allegations include Centurion.  *Id.* at 9.

 Although Plaintiff has not addressed that argument, the Court notes

that the complaint does include allegations which generically use the term

"Defendants" without clarification.  For example, Plaintiff alleges:

"Defendants cooperated in a policy to short-staff corrections security

positions . . . ."  ECF No. 5 at 6.  Plaintiff also alleges that "Defendants

---

[7] Notably, the statute provides that the "exclusive remedy" for injury suffered as a result of an agent of the state is "by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee . . . ."  FLA. STAT. § 768.28(9)(a).

knew about the unauthorized visits of inmates and did nothing about it."  *Id.*

Further, Plaintiff alleges that "Defendants cooperated in a policy to permit,

facilitate, ratify, condone the concealing or covering up suspicious

circumstances surrounding inmate violence and deaths."  *Id.* at 7.

Considering that there are multiple Defendants named in the complaint,

allegations which lump "Defendants" together without specifics are less

than clear.  However, this complaint does not meet the definition of a

"shotgun pleading."

> Shotgun pleadings violate Federal Rule of Civil Procedure
> 8(a)(2)'s "short and plain statement" requirement by "failing ...
> to give the defendants adequate notice of the claims against
> them and the grounds upon which each claim rests." *Vibe
> Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir.
> 2018) (quotations and alteration omitted). Shotgun pleadings
> are characterized by: (1) multiple counts that each adopt the
> allegations of all preceding counts; (2) conclusory, vague, and
> immaterial facts that do not clearly connect to a particular
> cause of action; (3) failing to separate each cause of action or
> claim for relief into distinct counts; or (4) combining multiple
> claims against multiple defendants without specifying which
> defendant is responsible for which act.  *Weiland v. Palm Beach
> Cty. Sheriff's Ofc.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

Clifford v. Federman, 855 F. App'x 525, 528 (11th Cir.), cert. denied, 142 S.

Ct. 338 (2021).

Although the complaint uses the term "Defendants" three or four times in generic fashion, additional clarification is provided in Counts IV and VI.  Those separate counts are specifically directed at Centurion.  The complaint includes statements of fact which give notice of the specific claims against Centurion and the grounds upon which those claims rest. There are specific, separate counts directed to specific Defendants, and those counts point to facts which support the claims.  Defendants have adequate notice of the claims against them and the factual allegations upon which each claim rests.  Because Plaintiff did not submit a shotgun pleading, the motion to dismiss, ECF No. 9 at 7, should be denied as to that argument.

**3.      Failure to State a Claim**

Centurion contends that the complaint fails to state a claim for deliberate indifference for two reasons: "(1) it fails to allege a constitutional violation and (2) it fails to allege the existence of a Centurion policy or custom that is the moving force behind any constitutional violation."  ECF No. 9 at 10.  Centurion argues that Plaintiff has not specifically alleged "what was inadequate about the medical treatment rendered to Mr. Ferrell" beyond conclusory allegations and, thus, Plaintiff has not shown deliberate

indifference.  *Id.* at 13-15.  Additionally, Centurion contends that the complaint "fails to plausibly allege a Centurion policy or custom was the moving force behind any supposed constitutional violation."  *Id.* at 17.

Plaintiff responds by arguing that he is "not required to provide detailed factual allegations to survive a 12(b)(6) motion."  ECF No. 15 at 5-6 (citing Twombly and Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010)).  According to Plaintiff, the allegations sufficiently demonstrate that Mr. Ferrell had a serious medical injury requiring emergency care and that failing to provide that treatment constitutes deliberate indifference.  *Id.* at 6.  In addition, Plaintiff contends that the complaint sufficiently alleged that "Centurion was deliberately indifferent to the known and obvious consequences of its official policies."  *Id.* at 8.  Finally, Plaintiff states that there is a "causal nexus between Plaintiff's factual allegations pertaining to Mr. Ferrell's injuries and Centurion's alleged policies and customs" which is sufficient to overcome Defendant's motion to dismiss.  *Id.* at 12-13.

When a private entity such as Centurion contracts with the State "'to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state' and 'becomes the functional equivalent of the [government] under section 1983.'"  Buckner v. Toro, 116

F.3d 450, 452 (11th Cir. 1997) (quoted in Craig, 643 F.3d at 1310).  The

government has an "obligation to provide medical care for those whom it is

punishing by incarceration."  Estelle, 429 U.S. at 103, 97 S. Ct. at 290.  If a

prisoner's medical needs are not treated, in some cases, "such a failure

may actually produce physical 'torture or a lingering death.'"  429 U.S. at

103, 97 S. Ct. at 290 (citation omitted).  It is well established that

"deliberate indifference to serious medical needs of prisoners constitutes

the 'unnecessary and wanton infliction of pain,' . . . proscribed by the

Eighth Amendment."  429 U.S. at 104, 97 S. Ct. at 291 (citation omitted).

To present a viable claim for deliberate indifference to a prisoner's

serious medical needs, a complaint must provide facts that "show: (1) a

serious medical need; (2) the defendants' deliberate indifference to that

need; and (3) causation between that indifference and the plaintiff's injury."

Craig, 643 F.3d at 1310 (quoting  Mann v. Taser Int'l, Inc., 588 F.3d 1291,

1306 (11th Cir. 2009)).  However, an entity cannot be held vicariously liable

under § 1983 for the actions of its employees; instead, a plaintiff must

prove that the entity "had a 'policy or custom' of deliberate indifference that

led to" the constitutional violation.  Monell v. Dep't of Soc. Servs. of N.Y.C.,

436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978) (cited

in Craig, 643 F.3d at 1310).  Demonstrating a policy or custom requires

more than "a single incident;" a "pattern of similar constitutional violations is

ordinarily necessary."  643 F.3d at 1310 (citations omitted).  "[A] custom

must be such 'a longstanding and widespread practice [that it] is deemed

authorized by the policymaking officials because they must have known

about it but failed to stop it.'"  *Id.* (quoting Brown v. City of Fort Lauderdale,

923 F.2d 1474, 1481 (11th Cir. 1991)).  Additionally, because "[a]

government entity rarely will have an officially-adopted policy that permits a

particular constitutional violation, ... most plaintiffs must demonstrate that

the government entity has a custom or practice of permitting the violation."

Morgan v. Tucker, No. 3:13-cv-81- J-34PDB, 2016 WL 1089994, at *4

(M.D. Fla. Mar. 21, 2016) (quoted in Herr v. Armor Corr. Health Servs.,

Inc., No. 619cv394ORL37EJK, 2019 WL 12021672, at *5 (M.D. Fla. Sept.

9, 2019)).  "Repeated examples of delayed or denied medical care may

indicate a deliberate indifference by prison authorities to the suffering that

results."  Rogers v. Evans, 792 F.2d 1052, 1059 (11th Cir. 1986) (quoted in

Herr, 2019 WL 12021672, at *5).

     To survive a motion to dismiss, the complaint must allege that

Centurion had a custom or policy that constituted deliberate indifference

and that the custom or policy caused the constitutional violation.  <u>McDowell</u> <u>v Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004).  In other words, the custom or policy must have been the "moving force" behind the constitutional deprivation.  <u>Monell</u>, 436 U.S. at 694, 98 S. Ct. at 2038; <u>McElligott v. Foley</u>, 182 F.3d 1248, 1259 (11th Cir. 1999).

Here, Plaintiff alleged that Mr. Ferrell was "attacked by another inmate due to the correctional facility being understaffed and as a result of the lack of policies and procedures and security in place to protect the inmates."  ECF No. 5 at 3.  After the attack, "Mr. Ferrell suffered from [a] serious medical need to wit, the need for urgent care for the wounds he sustained as a result of the stabbing, the need to urgently be treated by a doctor, and/or the need to be timely transferred to the hospital . . . ."  *Id.* at 15.  Centurion was "aware of the need for medical treatment and emergency treatment of inmates, including Decedent Mr. Ferrell pursuant to testimony from Cross City Correctional Institution employees and inmates stating that timely medical care has been an issue at Cross City Correctional Institution as well as a lack of readily available medical kits and devices in each dorm in the event of medical emergencies such as the medical emergency in this instance."  *Id.*

Case No. 4:21cv397-WS-MAF

As the allegations pertain to Centurion, the complaint alleged that medical staff "failed to respond on an emergency basis," did not initiate "lifesaving protocols" in a timely manner, and "there was a lack of responsiveness from the medical staff."  *Id.* at 4.  It was further alleged that "Mr. Ferrell's life could have been saved if the officer, medical staff and supervisor had acted reasonably in response to the known serious medical condition that cost Mr. Ferrell his life."  *Id.* at 8.

The complaint further alleged that between 2015 and 2021, there were 90 inmate homicides within the Florida Department of Corrections. *Id.* at 5.  It was alleged that "[h]ad there been a policy for appropriate medical kits, equipment and devices to be placed in each dorm, Defendant, Larian Ferrell's life could have been saved."  *Id.* at 6.  Further, the complaint alleged that there was "a policy to short-staff medical personnel positions such that there was not a fully, adequate and or competent medical staff at the prison facilities, including Cross City Correctional Institution on the day of the incident."  *Id.*  Another allegation was that Centurion "acted with deliberate indifference in the failure to implement a policy and/or implementing an adequate policy for incidents like that described herein when it was obvious that the consequences of not

implementing a policy would result in the deprivation of civil rights." *Id.* at
16.  The complaint also alleged that Centurion failed to implement an
"adequate policy regarding the response time for inmate medical
treatment," or a policy "regarding the availability of medical kits and/or
devices in dorms in the event of medical emergencies."  *Id.* at 16-17.

    For purpose of providing notice, the complaint provides sufficient
facts to alert Centurion to Plaintiff's challenges to its policies and customs.
Although the complaint does not provide specific detail as to prior
circumstances, it did allege that 90 inmate homicides occurred which would
put Centurion on notice of the need for policies for emergency situations.
The omission of any specific allegations to show that those homicides
occurred in dormitories, or that other inmates died because of a delay in
medical staff response time or the lack of medical kits in the dormitory is
not fatal.  Plaintiff provided sufficient allegations to state a claim for
deliberate indifference, and alleged a causal connection between
Centurion's policies and and Mr. Ferrell's death.  Plaintiff will be required to
come forward with evidence to support those allegations at summary
judgment, but the facts alleged "raise a reasonable expectation that
discovery will reveal evidence" to support Plaintiff's § 1983 claim.  The

complaint is sufficient to proceed and Centurion's motion to dismiss, ECF No. 9, should be denied as to the Eighth Amendment claim.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to dismiss, ECF No. 9, be **GRANTED in part and DENIED in part**. Plaintiff's state law Wrongful Death Act claim should be **DISMISSED**, but the § 1983 claim for deliberate indifference should proceed.  It is further **RECOMMENDED** that this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on January 13, 2022.


 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic**

**docket is for the Court's internal use only and does not control.** If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.