## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | |
|---|---|
| LEROY FERRELL, as Executor de son Tort of the Estate of LARIAN FERRELL, and on behalf of survivors, LEROY FERRELL and JULIE FERRELL, <br><br> Plaintiff, <br><br> v. <br><br> FLORIDA DEPARTMENT OF CORRECTIONS, MARK INCH, in his official capacity as Secretary, JOHN DOES 1-5; MILTON HICKS, individually and CENTURION OF FLORIDA, LLC, a health services corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CASE NO.: 4:21-cv-00397-WS-MAF |

## CENTURION OF FLORIDA, LLC'S OBJECTION TO SECOND REPORT AND RECOMMENDATION [ECF NO. 26]

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72, Defendant Centurion of Florida, LLC ("Centurion") respectfully submits this objection to portions of the Magistrate Judge's Second Report and Recommendation (the "Report"), ECF No. 26, as follows:

## INTRODUCTION

Plaintiff Leroy Ferrell ("Plaintiff") brought this action against Centurion claiming Centurion was deliberately indifferent to the medical needs of Larian

Ferrell ("Mr. Ferrell"), who was fatally stabbed by another inmate. Centurion moved to dismiss the deliberate indifference claim for failure to state a claim. ECF No. 9 at 10–17. The Magistrate Judge recommends the denial of Centurion's Motion.[1] ECF No. 26 at 17–24.

The Report concludes Plaintiff plausibly alleged a constitutional violation and *Monell* liability against Centurion despite Mr. Ferrell failing to allege a single fact in the Complaint (ECF No. 5) about the medical care provided to Mr. Ferrell. Absent factual allegations, Plaintiff cannot have met his burden of pleading a constitutional violation, and the Report erred in concluding otherwise.

The Report further erred in concluding Plaintiff had plausibly alleged the existence of a Centurion policy or custom was the moving force behind any deprivation of Mr. Ferrell's constitutional rights. Plaintiff failed to allege facts from which an inference could be drawn that Centurion was aware of a strong likelihood of substantial risk of serious harm to Mr. Ferrell or that any alleged Centurion policy or custom caused a violation of Mr. Ferrell's rights.

This Court, in conducting its *de novo* review, should conclude Plaintiff's allegations fail to plausibly allege either a constitutional violation or that a Centurion policy or custom was the moving force behind any deprivation of Mr. Ferrell's

---

[1] Centurion does not object to the Report's recommendation that the wrongful death claim be dismissed based on sovereign immunity. ECF No. 26 at 5–15.

constitutional rights. Such a ruling is in line with the conclusion of other courts in this division when confronted with nearly identical allegations. *See Myles v. Fla. Dep't of Corr., et al.*, No. 4:21-cv-87-AW-MJF (N.D. Fla.).

## LEGAL STANDARD

"Within fourteen days after being served with a copy" of a magistrate judge's proposed findings and recommendations, "any party may file and serve written objections to" them. 28 U.S.C. § 636(b)(1). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* The judge should also review legal conclusions de novo, even without objection. *See Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

Upon proper objection, "the district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## ARGUMENT

The Report recommending the denial of Centurion's Motion to Dismiss the deliberate indifference claim against it makes legal conclusions contrary to Eleventh Circuit precedent, and, thus, should be rejected as described herein.

**A. Complaint fails to allege a constitutional violation.**

The Eighth Amendment protects inmates from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But a "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). As the Eleventh Circuit explained,

> "[D]eliberate indifference is *not* a constitutionalized version of common-law negligence." "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (internal citations omitted) (emphasis in original); *accord Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) ("As applied in the prison context, the deliberate-indifference

standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'").

Indeed, the Eleventh Circuit has cautioned courts against employing a "'perhaps they could be doing more' standard" when considering claims of deliberate indifference to a serious medical need. *Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020) (quoting *Hoffer*, 973 F.3d at 1271). Instead, courts should first consider the care provided to an inmate and, if such care satisfies the constitutional minimum, then there is no need to consider whether a defendant could have done more. *Hoffer*, 973 F.3d at 1277 (concluding it did not need to reach the question of whether less efficacious care was provided pursuant to a cost defense "because we have held that the Eighth Amendment's 'minimally adequate care'" was provided).

To constitute deliberate indifference, medical care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1271. In the constitutional context, "[O]nly the most egregious official conduct" shocks the conscience. *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003). Indeed, "acts intended to injure in some way *unjustifiable by any government interest* are most likely to rise to the conscience-shocking level." *Id.* (emphasis added and cleaned up).

As the Supreme Court has explained, "Deliberate indifference that shocks in one environment may not be so patently egregious in another." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 850, 118 S. Ct. 1708, 1718, 140 L. Ed. 2d 1043 (1998). The *Lewis* Court noted that "the measure of what is conscience shocking is no calibrated yard stick."' *Waldron v. Spicher*, 954 F.3d 1297, 1306 (11th Cir. 2020). Instead, "[c]ontext and circumstances are significant, and the level of culpability required can vary with the context."' *Id.* (quoting *Lewis*, 523 U.S. at 849-54.

In *Lewis*, "[t]he Court contrasted the context of a pretrial detainee in need of medical care to that of a prison riot or the high-speed chase." *Id.* (citing *Lewis*, 523 U.S. at 849–53). The Court noted that "actual deliberation is practical" in the context of dealing with a pretrial detainee in need of medical care because of the absence of "substantial countervailing interest[s] exus[ing]" the State from providing constitutionally adequate care from those in its custody, but the same is not true when officials are "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 1306–07. In the latter, "when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock" necessary to impose liability under the Constitution. *Lewis*, 523 U.S. at 853.

In the context of providing medical care to prisoners under normal circumstances, "[M]ere evidence of negligence 'in diagnosing or treating a medical

condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. In the context of a prisoner-on-prisoner homicide, where the circumstances are "tense, uncertain and rapidly evolving," prisoners must be detained and locked down to ensure the safety of prisoners, corrections officers, and medical staff, care that "sparks a shock" must necessarily be more exacting than the deliberate indifference standard in the context of providing medical care under normal circumstances.

Under this framework, the Report errs in concluding Plaintiff plausibly alleged a constitutional violation for two reasons. *First,* Plaintiffs fails to allege any facts about what medical care was provided to Mr. Ferrell, resulting in a complete lack of factual basis supporting the existence of a constitutional violation. Instead, Plaintiff merely makes unsupported conclusory allegations that should not be considered. *Second*, based on what can be gleaned from the conclusory allegations, it is apparent the medical treatment provided to Mr. Ferrell is insufficient to shock the conscience under the circumstances.

## 1. Complaint lacks factual allegations establishing constitutional violation.

Plaintiff's claim against Centurion fails because he has not adequately alleged facts that plausibly establish a constitutional violation. Federal Rule of Civil

7

Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this standard, a plaintiff must allege "sufficient facts to state a plausible claim" and cannot rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). *Accord Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1272 (11th Cir. 2004) (explaining "wholly conclusory allegations" that "lack *any* factual support … are 'insufficient to meet even the liberal standard of notice pleading.'").

Here, Plaintiff's Complaint fails to include a single factual allegation about what the medical staff did or did not do in caring for Mr. Ferrell. *See generally* ECF No. 5. Instead, Plaintiff makes conclusory allegations, such as:

- "[W]hen medical staff were notified … they did not respond in a timely manner." *Id.* at ¶ 22;

- "Medical staff failed to respond on an emergency basis." *Id.* at ¶ 23;

- "Lifesaving protocols were not initiated in a timely manner." *Id.* at ¶ 24;

- "[T]here was a lack of responsiveness from the medical staff…." *Id.* at ¶ 25;

- "Had there been a policy for appropriate medical kits, equipment and devices to be placed in each dorm, Decedent, Larian Ferrell's life could have been saved." *Id.* at ¶ 36;

- "FDOC and Centurion cooperated in a policy to short-staff medical personnel positions such that there was not a fully, adequate and or competent medical

staff at the prison facilities, including Cross City Correctional Institution on the day of the incident." *Id.* at ¶ 38;

- "Mr. Ferrell's life could have been saved if the officer, medical staff and supervisor had acted reasonably…." *Id.* at ¶ 54;

- "Defendant was aware of the need for medical treatment and emergency treatment of inmates, including Decedent Mr. Ferrell pursuant to testimony from Cross City Correctional Institution employees and inmates stating that timely medical care has been an issue at Cross City Correctional Institution as well as a lack of readily available medical kits and devices in each dorm in the event of medical emergencies such as the medical emergency in this instance." *Id.* at ¶ 91;

- "Defendants acted with deliberate indifference in the failure to implement a policy and/or implementing an inadequate policy for incidents like that described herein when it was obvious that the consequences of not implementing a policy would result in the deprivation of civil rights." *Id.* at ¶ 96; and

- "Defendants acted with deliberate indifference in the failure to implement a policy and/or implementing an inadequate policy regarding the response time for inmate medical treatment for incidents like that described herein when it was obvious that the consequences of not implementing a policy would result in the deprivation of civil rights." *Id.* at ¶ 97.

These conclusory allegations are the allegations on which the Report erroneously relied to conclude Plaintiff had plausibly alleged a constitutional violation. ECF No. 26 at 21–23.

To be clear, there is not a single factual allegation about how long it took for medical staff to arrive on seen after being notified Mr. Ferrell was attacked. There is not a single allegation stating what medical staff did or failed to do after they

arrived. The complete absence of factual allegations regarding medical treatment means Plaintiff has not plausibly alleged a constitutional violation against Centurion.

In a very similar case involving the fatal stabbing of an inmate, another court in this division concluded nearly identical allegations failed to plead a constitutional violation. *Myles v. Florida Department of Corrections, et al.*, No. 4:21-cv-87-AW-MJF at ECF No. 25, p. 3 (N.D. Fla. May 19, 2021). That court concluded that while the "complaint does include several conclusory allegations," such as Centurion failing to adequately treat the decedent in that case, "it alleges no specifics; it does not allege what Centurion's staff did or should have done." *Id.* at p. 4.

This Court should reach the same result and conclude that the conclusory allegations in the Complaint fail to plausibly allege a constitutional violation. Accordingly, the Court should sustain this objection, reject this portion of the Report, and dismiss the deliberate indifference claim for failure to state a claim.

### 2. No allegation of conduct that shocks the conscience.

Assuming *arguendo* Plaintiff's conclusory allegations were sufficient to state a claim—which they are not—Plaintiff fails to allege that the medical treatment provided to Mr. Ferrell shocks the conscience under the circumstances.

Even under normal circumstances in a correction setting, courts are reluctant to find constitutional claims "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment." *Hoffer*, 973 F.3d at 1272.

"[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle,* 429 U.S. at 10).

Under circumstances like those described in the Complaint—where an inmate stabbed another inmate in a dorm where other prisoners were present—the bar for conduct that shocks the conscience necessarily increases. *Lewis*, 523 U.S. at 852–53 (explaining higher standard for establishing Eighth Amendment violation in context of a prison riot than in typical correctional setting). As such, Plaintiff was required to plead conduct on behalf of the medical staff that satisfies the *Lewis* standard to establish a constitutional violation.

But Plaintiff's conclusory allegations do not reach this high bar. The Complaint acknowledges, at least implicitly, that medical treatment was provided to Mr. Ferrell, and the dispute in this lawsuit is over the adequacy of that treatment. Even in the typical correctional setting, such a dispute would be insufficient to establish a claim for deliberate indifference. *Hoffer*, 973 F.3d at 1272 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Because

Plaintiff's claim would fail to establish deliberate indifference even under normal circumstances, the allegations certainly do not satisfy the higher standard the Court should employ to determine whether Plaintiff plausibly alleged a constitutional violation under these heightened circumstances. Accordingly, the Court should sustain this objection, reject this portion of the Report, and dismiss the deliberate indifference claim for failure to state a claim.

**B. Complaint fails to allege *Monell* liability against Centurion.**

If the Court agrees Plaintiff failed to plausibly allege a constitutional violation, it need not address this second, independent objection. That is because a governmental entity, or state actor like Centurion, cannot be liable for deliberate indifference when there has been no constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[The city and police commission] were sued only because they were thought legally responsible for [the officer's] actions; if the latter inflicted no constitutional injury on respondent, it is inconceivable that petitioners could be liable to respondent.); *accord Knight through Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation."). But even if the Court overrules the objection raised in Section A, it should nonetheless reject the Report and dismiss the deliberate indifference claim because Plaintiff failed to

plausibly allege a Centurion policy or custom was the moving force behind any constitutional violation.

While private contractors who provide medical care for prisons, like Centurion, act under the color of state law for the purposes of § 1983, they cannot be liable under theories of *respondeat superior* or vicarious liability. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985); *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978) ("Congress did not intend to create liability under § 1983 unless action pursuant to an official policy or custom caused a constitutional tort."); *accord Grech v. Clayton Cnty, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*) ("Liability under § 1983 may not be based on the doctrine of *respondeat superior*.").

Instead, a plaintiff may successfully state a § 1983 claim and show liability of a government entity "only where the [government entity] itself causes the constitutional violation at issue" through implementation of an official policy or custom. *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). To establish an official policy or custom of the government entity caused a constitutional violation, a plaintiff must show it was the "moving force" behind the alleged constitutional deprivation. *See Monell* 436 U.S. at 693–94. Thus, to successfully raise a § 1983 claim against Centurion, Plaintiff must allege (1) Mr. Ferrell's constitutional rights were violated,

(2) Centurion had a custom or policy that constituted deliberate indifference to that particular right, and (3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown,* 520 U.S. 397, 404 (1997). The Eleventh Circuit defines "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). It is also a requirement that, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

Here, the Report erroneously concluded Plaintiff had plausibly alleged a Centurion policy or custom was the moving force behind Mr. Ferrell's alleged constitutional deprivation. ECF No. 26 at 23. Specifically, the Report states:

> Although the complaint does not provide specific detail as to prior circumstances, it did allege that 90 inmate homicides occurred which would put Centurion on notice of the need for policies for emergency situations. The omission of any specific allegations to show that those homicides occurred in dormitories, or that other inmates died because of a delay in medical staff response time or the lack of medical kits in the dormitory is not fatal.

14

*Id.* The portion of the Complaint referenced in the Report states: "From the period of 2015 to 2021, there have been a total of 90 inmate deaths that were determined to be homicides by the Medical Examiner." ECF No. 5 at ¶ 29. Based on this single sentence, the Magistrate Judge concluded Centurion was subject to liability under the Eighth Amendment. ECF No. 26 at 23.

This conclusion was erroneous for two reasons. *First*, the Report incorrectly allows a single vague allegation to establish that Centurion had notice of a strong likelihood of substantial risk of serious harm. *Second,* even if notice was adequately pleaded, there are still nothing but conclusory allegations in the Complaint related to the existence (or lack thereof) of a Centurion policy that was the alleged moving force behind a violation of Mr. Ferrell's constitutional rights.

## 1. Plaintiff did not establish notice of risk of harm to Mr. Ferrell.

To establish *Monell* liability, Plaintiff must have plausibly alleged that Centurion had a custom or policy that constituted deliberate indifference to Mr. Ferrell's Eighth Amendment rights. *McDowell*, 392 F.3d at 1289. As the Eleventh Circuit explained in the context of inmate-on-inmate violence claims:

> Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. However, not every instance of inmate on inmate violence translates into a constitutional liability for prison officials responsible for the victim's safety. A violation occurs when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk. … Merely negligent failure to protect an inmate from attack does not justify liability under section 1983. The known risk of injury must be a

strong likelihood, rather than a mere possibility before a[n official]'s failure to act can constitute deliberate indifference. Moreover, to be deliberately indifferent, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*

*Chatham v. Adcock*, 334 F. App'x 281, 291 (11th Cir. 2009) (cleaned up and citations omitted). Thus, under this framework, Plaintiff must have alleged that Centurion aware of a strong likelihood of substantial risk of serious harm to Mr. Ferrell. *Id.* And it is not enough that Centurion have been aware of the facts from which an inference could be drawn—Centurion also had to draw the inference. *Id.*

The Report does not address this requirement in detail, but presumably the Magistrate Judge's basis for finding this requirement was satisfied was solely on Plaintiff's reference to 90 inmate homicides between 2015 and 2021. But, as Centurion argued in its Motion to Dismiss, this allegation is insufficient because it does not support an inference that Centurion had notice of a strong likelihood of a substantial risk of serious harm to Mr. Ferrell for at least three reasons.

First, Mr. Ferrell was fatally stabbed on May 18, 2019, but the 90 prisoner homicides that Plaintiff references occurred as late as 2021—two years after Mr. Ferrell's death. Logically, no homicides occurring after Mr. Ferrell's death could put Centurion on notice of a strong likelihood of substantial risk of serious harm to Mr. Ferrell. And because Plaintiff failed to parse out any data related to inmate homicides *preceding* Mr. Ferrell's death, Plaintiff has not pleaded facts from which an

inference can be drawn that Centurion knew of a substantial risk of serious harm to Mr. Ferrell in failing to implement a policy for emergency treatment.

Second, also lacking from Plaintiff's allegation about the 90 prior inmate homicides is any discussion regarding the circumstances of the homicides and the medical treatment provided. If constitutionally adequate medical treatment was provided to those inmates, then, again, Centurion could not have deliberately disregarded a known risk of harm to Mr. Ferrell by failing to implement a different policy for emergency treatment.

And third, there is no allegation any prior inmate homicides occurred at Cross Creek Correctional Institution, where Mr. Ferrell was housed.[2] As this Court is aware, not all correctional institutions are the same—either in size, inmate population, or in the level of inmate-on-inmate violence. Absent allegations of facts from which Centurion could draw an inference that there was a substantial risk of serious harm to Mr. Ferrell while housed *at Cross Creek Correctional Institution*, there can be no liability. And because Plaintiff fails to allege any other inmate homicides occurred at Cross Creek Correctional Institution *prior to* Mr. Ferrell's

---

[2] Plaintiff points to another inmate death that occurred at Cross Creek Correctional Institution *after* Mr. Ferrell's death—which cannot have put Centurion on notice about any inadequacies in its policies—and the alleged killing of an inmate by corrections officers. Neither of these scenarios are similar enough to the allegations in this case to be relevant. *Id.* at ¶¶ 30–31. The Report also did not rely on these allegations in concluding Plaintiff alleged a Centurion policy or custom was the moving force behind an alleged violation of Mr. Ferrell's constitutional rights.

death, Plaintiff has failed to plausibly allege that a Centurion policy or custom was the moving force behind any constitutional violation.

Accordingly, the Report erred in concluding Plaintiff sufficiently alleged facts from which an inference could be drawn that Centurion had notice of a strong likelihood of a substantial risk of serious harm to Mr. Ferrell. *Cf. Perez v. City of Sweetwater*, 770 F. App'x 967, 975 (11th Cir. 2019) (affirming dismissal of *Monell* deliberate indifference claim because plaintiff failed to provide evidence of "circumstances 'substantially similar' to the constitutional violation" he asserted, which meant the plaintiff's "evidence could not have put the City on actual or constructive notice" of need for additional policies or training). Because the Court can draw no such inference, Plaintiff failed to plausibly state a claim for deliberate indifference against Centurion, and the claim should be dismissed.

## 2. No factual allegation Centurion policy or custom was moving force behind violation of Mr. Ferrell's constitutional rights.

But even if Plaintiff had alleged sufficient facts to establish Centurion was deliberately indifferent, Plaintiff's claim should nonetheless be dismissed because Plaintiff has not plausibly alleged any Centurion policy or custom was the moving force behind a violation of Mr. Ferrell's Eighth Amendment rights. *McDowell*, 392 F.3d at 1289 (explaining causation is the third element for *Monell* claim). The Report did not address causation in detail; instead, the Report summarily concludes Plaintiff

"alleged a causal connection between Centurion's policies and Mr. Ferrell's death." ECF No. 26 at 23. This, too, is error.

As argued in Section A.1., the Complaint is bereft of factual allegations regarding the medical treatment provided to Mr. Ferrell. This is reason alone to find that Plaintiff did not plausibly allege causation since no link can be drawn between a policy or custom and the care provided by medical staff.

Beyond that, Plaintiff also failed to allege any facts about emergency medical treatment provided to *other* victims of inmate-on-inmate attacks, which goes to the essence of whether Mr. Ferrell's allegedly inadequate medical treatment was the result of a policy or custom, or merely a one-off occurrence. *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) ("'Proof of a single incident of unconstitutional activity is not sufficient to impose liability' against a municipality.'" (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)). This requirement to point to other substantially similar instances "prevents the imposition of liability based upon an isolated incident." *McDowell*, 392 F.3d at 1290.

Instead of specific factual allegations that plausibly allege a Centurion policy or custom was the moving force behind any supposed constitutional violation, Plaintiff relies solely on conclusory, boilerplate allegations that Centurion's "policies or lack thereof were the moving force behind the constitutional deprivations," ECF No. 5 at ¶¶ 96–98. *See Morgan v. Tucker*, 3:13-CV-81-J-34PDB,

2016 WL 1089994, at *6 (M.D. Fla. Mar. 21, 2016) (holding plaintiff's "boilerplate and conclusory allegations of [defendant's] policy or custom—devoid of any factual development—are insufficient to state a § 1983 claim."). In short, "there are no facts showing that these policies—even assuming Centurion had such policies—were what caused the alleged constitutional violation." *Myles*, No. 4:21-cv-87-AW-MJF at ECF No. 25, p. 5.

As such, the Report erred in concluding Plaintiff had plausibly alleged causation to support his *Monell* claim against Centurion. Because Plaintiff did not plead causation, the Court should reject the Report and dismiss Plaintiff's claim.

## <u>CONCLUSION</u>

A *de novo* review of the Complaint does not support the conclusions of the Report regarding Plaintiff's deliberate indifference claim. Plaintiff failed to allege any specific facts related to the medical treatment Mr. Ferrell received, which means he did not establish that the treatment provided to Mr. Ferrell shocked the conscience as required to state a claim for deliberate indifference. Further, Plaintiff failed to allege facts supporting an inference that Centurion was aware of a strong likelihood of substantial risk of serious harm to Mr. Ferrell based on its policies or alleged lack thereof. And, finally, Plaintiff failed to plead any facts from which this Court could conclude a Centurion policy or custom was the moving force behind his alleged constitutional deprivation. As such, the Court should reject the portion of the Report

related to Plaintiff's deliberate indifference claim against Centurion and dismiss the

deliberate indifference count for failure to state a claim.

*/s/ Brian Wahl*
Brian A. Wahl (Fla. Bar No. 95777)
BRADLEY ARANT BOULT CUMMINGS LLP
1819 5th Avenue N. – One Federal Place
Birmingham, AL 35203
Telephone: (205) 521-8800
Fax: (205) 521-8800
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

Jacob Hanson (Fla. Bar No. 91453)
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, FL 33602
Telephone: (813) 559-5500
Fax: (813) 229-5946
Primary Email: jhanson@bradley.com
Secondary Email: tabennett@bradley.com
Secondary Email: tbush@bradley.com
Secondary Email: sdhayes@bradley.com

**Counsel for Defendant Centurion of**
**Florida, LLC**

## **LOCAL RULE 7.1(F) CERTIFICATION**

Undersigned counsel certifies that the word count of the word processing

system used to prepare this motion states that the motion contains 5,019 words.

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 27, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to counsel of record.

/s/ *Brian Wahl*

Brian A. Wahl
