**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

**LEROY FERRELL, as Executor de son Tort of the Estate of LARIAN FERRELL, and on behalf of survivors LEROY FERRELL and JULIE FERRELL,**

**Plaintiff,**

**vs.** **Case No. 4:21cv397-WS-MAF**

**FLORIDA DEPARTMENT OF CORRECTIONS, RICKY D. DIXON, in his official capacity as SECRETARY JOHN DOES 1-5, MILTON HICKS, in his individual capacity, and CENTURION OF FLORIDA, LLC, a health services Corporation,**

**Defendants.**

**_________________________________/**

## THIRD REPORT AND RECOMMENDATION[1]

[1] The first Report and Recommendation, ECF No. 21, recommended denying Plaintiff's motion to remand this case to state court, ECF No. 13. It was adopted. ECF No. 25. The second Report and Recommendation, ECF No. 26, recommended granting in part the motion to dismiss, ECF No. 9, filed by Centurion of Florida, LLC, ECF No. 26. It also was adopted. ECF No. 28. The wrongful death claim was dismissed (Count VI), but the deliberate indifference claim (Count IV) continues. ECF No. 28 at 2.

Pending is an amended motion to dismiss, ECF No. 19, filed by Defendants Ricky D. Dixon,[2] Milton Hicks, and the Florida Department of Corrections ["FDOC"]. Plaintiff filed a response in opposition to the motion, ECF No. 23, and the motion is ready for a ruling. This case has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2(C) and this Report and Recommendation concerns only the amended motion to dismiss the complaint brought by the FDOC Defendants.[3]

**Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A complaint's well-pleaded factual allegations are accepted as true, but "conclusory allegations" unsupported by facts are "not entitled to an assumption of

---

[2] The complaint was brought against Mark Inch in his official capacity as Secretary of the Florida Department of Corrections. ECF No. 5 at 1. Because Mr. Inch is no longer in that position, current Secretary Ricky D. Dixon was automatically substituted as a Defendant pursuant to Rule 25(d). ECF No. 26.

[3] This case was initially filed in state court, but removed to this Court in late September 2021 by Defendant, Centurion. ECF No. 1. The complaint was separately entered on the docket as ECF No. 5.

truth." Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010). A complaint must allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" to support a plaintiff's claims. Twombly, 550 U.S. at 556 (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S. Ct. at 1949 (citing Twombly, 127 S. Ct. at 1965). A complaint does not need detailed factual allegations; however, pleadings which contain "no more than conclusions" are "not entitled to the assumption of truth." Ashcroft, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." 129 S. Ct. at 1950. A complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" 129 S. Ct. at 1949 (citing Twombly, 127 S. Ct. at 1965).

**Allegations of the Complaint**

Following the death of their son Larian Ferrell, Leroy Ferrell, as Executor de son Tort of the Estate of Larian Ferrell, filed this action on behalf of survivors and parents Leroy and Julie Ferrell, alleging deliberate

indifference and wrongful death. ECF No. 5 at 2. Mr. Ferrell had been incarcerated at Cross City Correctional Institution when he was fatally stabbed in the stomach by another inmate. *Id.* at 3. On May 18, 2019,[4] Mr. Ferrell died from his injuries. *Id.*

Cross City C.I. is a correctional institution operated under the authority of the Florida Department of Corrections [F"DOC"]. Defendant Milton Hicks was the Warden of Cross City C.I. at the time of the events at issue, and is sued in his individual capacity only. The Secretary of the FDOC, Ricky Dixon, is sued in his official capacity only. ECF No. 5 at 2.

The complaint alleges that Mr. Ferrell was attacked because the correctional facility was understaffed and lacked "policies and procedures and security . . . to protect the inmates." *Id.* at 3. Plaintiff claims that the prisoner "would not have been able to fatally injure Mr. Ferrell except for constitutional violations by prison officials, including medical officials." *Id.*

As it pertains to the claims brought against Defendants Hicks, Dixon, and the FDOC, it is alleged that "all Defendants knew that FDOC did not have a sufficient inmate classification policy; they did not have a sufficient

---

[4] The complaint was originally filed in state court at 11:58 p.m. on May 17, 2021. ECF No. 1 at 2; *see* ECF No. 1-1 at 1. An action for wrongful death must be filed within two years. FLA. STAT. § 95.11(4)(d).

safety, security and protection policy; they did not have sufficient security checks; and they did not have sufficient security training." *Id.* at 4. Plaintiffs contends that there was a 25% increase in inmate gang members in the year before Mr. Ferrell's attack and 90 inmate homicide deaths between 2015 and 2021. *Id.* at 5. Thus, Plaintiffs assert that FDOC employees, agents, policymakers, and supervisors knew that inmate violence was occurring, and they "knew that there was a serious need for more staff, better training of correctional officers, and better policies and procedures regarding the safety and security of inmates at Cross City Correctional Institution and at other correctional facilities in the state of Florida." ECF No. 5 at 5. The complaint alleges that Mr. Ferrell's "life could have been saved" if better policies and procedures were implemented. *Id.* at 6. Further, it is alleged that "Defendants cooperated in a policy to short-staff corrections security positions such that there was not a full, adequate and or competent staff in the prison dormitories, including the Cross City Correctional Institution on the day of the incident." *Id.* Defendants allegedly allowed "inmates to travel freely throughout the correctional facility when in fact, the inmates were not authorized to do so." *Id.*

Defendants were aware of "unauthorized visits of inmates and did nothing about it." *Id.*

It is also claimed that the FDOC "ratified or condoned the concealing or covering up of violence against inmates and suspicious circumstances surrounding inmate deaths, which made further deaths more likely." *Id.* at 7. FDOC allegedly also condoned "the practice of destroying evidence or failing to preserve evidence in regard to inmate deaths." *Id.* FDOC is also alleged to "condone the practice of failing to conduct effective investigation and/or conduct investigations in good faith in regard to inmate deaths." *Id.*

As it pertains to the instant motion to dismiss, the complaint asserts five (5) counts against the FDOC Defendants. Count I of the complaint raises a failure to protect claim under § 1983 against John Doe Correctional Officer and Sergeant Defendants. ECF No. 5 at 8-10. Count II is a failure to protect claim under § 1983 against Defendants Hicks and Dixon. *Id.* at 10-12. Count III is a deliberate indifference claim under § 1983 against Defendants Dixon, Hicks, and John Doe Supervisory Officers. *Id.* at 13-14. Count V is a state law claim brought against the FDOC pursuant to the Florida Wrongful Death Act, FLA. STAT. § 768.16, *et*

*seq*. *Id.* at 17-21. Count VII is an alternative claim for negligence against the FDOC, brought pursuant to state law. *Id.* at 25.

## ANALYSIS

### 1. Shotgun Pleading

Defendants contend that the complaint is an impermissible shotgun pleading that "does not give the Defendants proper notice of which allegations are levied against them" and should be dismissed. ECF No. 19 at 6-8. Defendants claim that it is "impossible for each Defendant to determine the claims and factual assertions made against him." *Id.* at 8. They argue that if the "Court were to eliminate the legal conclusions in this Complaint . . . there would be very little left of the Complaint to consider." *Id.* at 7.

In response, Plaintiff contends that the "Complaint alleges facts sufficient to state each claim." ECF No. 23 at 5. He asserts that the "Complaint adequately specifies the policy and customs that constituted deliberate indifference." *Id.* at 6.

> Shotgun pleadings violate Federal Rule of Civil Procedure 8(a)(2)'s "short and plain statement" requirement by "failing ... to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir.

> 2018) (quotations and alteration omitted). Shotgun pleadings are characterized by: (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act. *Weiland v. Palm Beach Cty. Sheriff's Ofc.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

Clifford v. Federman, 855 F. App'x 525, 528 (11th Cir.), cert. denied, 142 S. Ct. 338 (2021).

Although the complaint does re-allege "Common Allegations of Fact" for each count, it also includes specific facts listed under each separate count which give notice of the specific claims against Centurion and the grounds upon which those claims rest. The counts are separated into distinct causes of action, identify the Defendants sued under those causes of action, and at least generally points to facts which support the claims. Defendants have adequate notice of the claims against them and an asserted basis upon which each claim rests. Some assertions are, indeed, conclusory, but that in and of itself does not transform the complaint into a shotgun pleading. The motion to dismiss, ECF No. 19 at 6-8, should be denied as to that argument.

**2. Counts against the Secretary in his official capacity**

Defendants contends that Counts II and III are brought against Defendant Dixon "in his official capacity only, which is the functional equivalent of suing the FDOC itself." ECF No. 19 at 9. Because Plaintiff seeks money damages as relief, Defendant Dixon contends such damages are unavailable under § 1983 because Defendant Dixon has Eleventh Amendment immunity. *Id.*

It has been well established that when state officials named as defendants in their official capacity remove an action to federal court from state court, they consent to the jurisdiction of the federal forum and waive their Eleventh Amendment immunity from suit. Lapides v. Bd. of Regents of Univ. Sys. of Georgia, 535 U.S. 613, 620, 122 S. Ct. 1640, 1644, 152 L. Ed. 2d 806 (2002) (holding that the when the State "voluntarily agreed to remove the case to federal court," it "voluntarily invoked the federal court's jurisdiction"). That is so even if the state officials did not file the notice of removal. *See* Lapides, 535 U.S. at 624, 122 S. Ct. at 1646 (concluding "that the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity"). Here, Centurion filed the notice of removal, but clarified that "Counsel for Defendants Florida

Department of Corrections, March Inch, and Milton Hicks - the other named Defendants in this action - has advised that co-Defendants consent to removal." ECF No. 1 at 4. Thus, all Defendants have consented to removal and waived their Eleventh Amendment immunity, even though they have not necessarily waived all sovereign immunity based defenses. Stroud v. McIntosh, 722 F.3d 1294, 1296 (11th Cir. 2013); Green v. Graham, 906 F.3d 955, 958 (11th Cir. 2018). Defendant Dixon's assertion of Eleventh Amendment immunity should be rejected.

**3. Claims against John Doe Defendants**

Defendants contend that "fictitious-party pleading is not permitted in federal court," and they seek the dismissal of the two claims brought against "John Does 1-5." ECF No. 19 at 9-10. It is argued that the limited descriptions are insufficient and put "forth no information necessary to ascertain the identities of the alleged five correctional officers." *Id.* at 10. Because of the lack of information provided, Defendants contend the "five separate John Does appear to be arbitrary and lacking any factual basis" to support claims against "five separate individuals." *Id.* There is no mention of "specific job duties, job titles, shifts, work locations, or any explanation of

their actions or interactions with the Decedent that could assist in their identification." *Id.* at 11.

In response, Plaintiff contends that the complaint identifies a job title as "supervisory officers." ECF No. 23 at 9. Plaintiff argues that a subpoena has been issued for reports and records from the FDOC, but as of November 2021 when the response was filed, records had not been received as the case was "still under investigation." *Id.* Thus, Plaintiff urges that the complaint "not be dismissed based on the fact that FDOC has not yet identified some of the specific individuals who should be named." *Id.*

There are times when a plaintiff is "unable to use a party's real name" but is "able to describe an individual (e.g., the driver of an automobile) without stating his name precisely or correctly." Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992). Courts have allowed use of an unnamed defendant when it appears discovery will uncover the defendant's identity. Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) (cited with approval in Dean, 951 F.2d at 1216). However, naming a John Doe Defendant is allowed as "a limited exception" to the general rule against fictitious party pleading in federal court. Vielma v. Gruler, 808 F. App'x 872, 881 (11th

Cir. 2020). It is permissible "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" Dean, 951 F.2d at 1215-16 (quoted in Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010)); *see also* Weiland v. Palm Beach Cty. Sheriff's Off., 792 F.3d 1313, 1318, n.4 (11th Cir. 2015) (stating "[a]s a general matter, fictitious-party pleading is not permitted in federal court").

Here, the complaint names "John Does 1-5" as Defendants in the style of the case. ECF No. 5 at 1. The complaint alleges that "John Does 1-5 were individual persons who are agents or employees of the Florida Department of Corrections, who committed acts that violated the legal rights of Plaintiff's decedent . . . ." *Id.* at 3. It is also alleged that "Sergeant John Doe did not come to Mr. Ferrell's aid in a timely manner neither when he was aware that he was being attacked nor when he witnessed Mr. Ferrell suffering from a serious medical condition." *Id.* at 4. Additional facts alleged are that "Sergeant John Doe was the officer in charge during the shift when Mr. Ferrell suffered his fatal injury." *Id.* at 7. "Sergeant John Doe was careless and reckless in performance of his security duties." *Id.* "Sergeant John Doe was responsible for conducting security checks and

other security measures that were ignored prior to and subsequent to Mr. Ferrell's fatal injury." *Id.*

Those statements are not sufficient "to identify the defendant among the many guards employed at" a Correctional Institution or prison. Richardson, 598 F.3d at 738 (noting plaintiff described the defendant in the complaint only as "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institution"). The complaint provides little in the way of description to distinguish among the many correctional employees who work at a Correctional Institution. Plaintiff's assertion that the complaint identifies Defendants as "supervisory officers" is not well taken; many officers have supervisory responsibilities. *See* Seibert v. Comm'r, Georgia Dep't of Corr., 680 F. App'x 837, 840 (11th Cir. 2017) (finding that "allegations against 'GDOC supervisors' were properly dismissed since they are fictitious-party names"). "Supervisory officer" is not a job title and is far from specific; it is a general job duty. The complaint alleged only one particular job duty - that John Doe was "responsible for conducting security checks and other security measures" - but that does little to identify a specific person at a prison facility. Many employees perform those duties in multiple dormitories and other locations around the prison facility.

The only specific description given was for one John Doe Defendant. Plaintiff said he was "the officer in charge during the shift when Mr. Ferrell suffered his fatal injury." All other descriptions were "highly generic" and include a "title that is held by many individuals." Vielma, 808 F. App'x at 880 (affirming dismissal of John Doe defendants because they were not described "with enough specificity to enable service of process"). Alleging that "Sergeant John Doe did not come to Mr. Ferrell's aid" or "was careless and reckless" in performing his duties is not a sufficient description of a person.

Furthermore, discovery began on October 12, 2021, ECF No. 11, but as of this date, Plaintiff has not moved to substitute a specific person for any John Doe Defendant. Identifying an officer in charge for a specific shift should not be difficult.

Plaintiff argues that the John Does should not be dismissed because the "FDOC has not yet identified some of the specific individuals who should be named." Further, an unopposed motion to extend the discovery deadlines was filed on March 9, 2022, by the FDOC Defendants. ECF No. 32. That motion explained that an important piece of discovery in this case is an investigation by F.D.L.E. which has not yet been completed. *Id.* at 2.

Until that process is finalized, the parties do not have "access to the complete reports and attachments." *Id.* at 3.

Review of the relevant reports may provide greater insight into the identities of the John Doe Defendants involved in this case. The Eleventh Circuit has advised that "a relevant consideration when determining whether a plaintiff can pursue a claim against an unnamed defendant" is whether "discovery would uncover [a] defendant's identity." Vielma, 808 F. App'x at 880. However, the Court added that its "precedent has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity. Instead, our precedent has always required an unambiguous description of a defendant that enables service of process." 808 F. App'x at 880 (citing to Dean).

Furthermore, discovery is not certain to identify the John Doe Sergeants because no other physical description is given or facts alleged which would permit determining which of many sergeants is being sued. The Eleventh Circuit has "allowed suit against a fictitious defendant described as 'Chief Deputy of the Jefferson County Jail John Doe,' but that [was] only because the description identified the one "person in charge of the Jefferson County Jail." Smith v. Comcast Corp., 786 F. App'x 935, 940

(11th Cir. 2019) (explaining Dean, 951 F.2d at 1215-16 & n.6). Here, Plaintiff has not provided a sufficient description to single out one employee. Smith, 786 F. App'x at 940 (noting that plaintiff's "description does not necessarily pick out one Comcast employee").

Because of the insufficient descriptions provided, it is doubtful that discovery would be helpful in determining which official is the intended John Doe. An interrogatory which seeks to identify the officer who "did not come to Mr. Ferrell's aid" or who "was careless and reckless" will not be successful.

As the Eleventh Circuit has noted, "[t]his sue-first-and-sort-out-the-defendant-later approach is not how litigation works in federal court." Vielma, 808 F. App'x at 881.

> [A] plaintiff who knows the name of one defendant but not another is not without recourse. He can sue the party he knows, conduct discovery, and amend his pleadings or file a new case once he knows the name of other responsible parties. Nevertheless, Plaintiffs chose to bring all their claims at once to see how they would fare before doing the hard work that discovery requires.

808 F. App'x at 881. Such choices "have consequences." *Id.* Here, the consequence is that Plaintiff has not sufficiently alleged a physical description or action of any John Doe Defendant to proceed, with the

possible exception of one John Doe Defendant - the officer in charge. Yet Plaintiff has had ample opportunity since the motion to dismiss was filed on November 5, 2021, to conduct discovery and move to substitute a person for that John Doe Defendant which would have resolved the problem. That has not happened.

In addition, while Plaintiff named John Does 1-5, the only specific information given was for “John Doe Sergeants.” No factual allegations identify or describe a specific John Doe correctional officer, and there are no facts alleged which describe how a John Doe correctional officer violated the rights of the Decedent. Count I of the complaint presents a claim against “Defendant Correctional Officer John Doe,” but provides no facts in support of that claim concerning the actions of a correctional officer. A correctional officer is a different position from a correctional sergeant, lieutenant, or captain. Count I of the complaint, which was only asserted against a correctional officer, should be dismissed.

As for Count III, Plaintiff raises it against Defendants Inch, Hicks, and “Supervisory Officers.” ECF No. 5 at 13. To the degree it should be construed to allege a claim against the John Doe Sergeant who was the officer in charge, it could remain because that official has enough of a

description to be readily identified. Nevertheless, the complaint does not allege facts which show what the John Doe officer in charge did, or failed to do, that was deliberately indifferent to Mr. Ferrell's rights. Therefore, there is no basis to continue Count III as to the John Doe Sergeant because insufficient facts were presented to support an Eighth Amendment claim against that official. The motion to dismiss Count III as to John Doe "Supervisory Officers" should be granted.

**4. Counts II and III against Defendant Hicks**

Defendant Hicks is identified in the complaint as the Warden of Cross City C.I. and is sued in his individual capacity. Count II of the complaint is a "custom or policy" claim pertaining to the failure to protect Mr. Larrell, which is brought against both Defendants Hicks and Dixon. There is little in the way of factual allegations to differentiate between the two Defendants. The complaint generally alleges that "Defendants have a history of failing to supervise inmates" or Defendants developed, enforced or maintained policies or customs. ECF No. 5 at 11. The allegations do not provide any specific facts which separate or distinguish between the two Defendants. It is unknown which policies and procedures are created by the Secretary, and which are created by the Warden. Moreover, the

assertions are conclusory only and are not supported by clear statements of fact which identify how Defendant Hicks had a "callous disregard" for the safety of inmates or failed "to properly train or supervise correctional officers." *See* ECF No. 5 at 11-12. The complaint did not allege specific facts to show what Defendant Hicks did, or failed to do; instead, it asserts legal conclusions.

"A § 1983 claim against a supervisor must show the supervisor participated in the 'alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.'" Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (quoted in Seibert, 680 F. App'x at 840). "A plaintiff must allege grounds for relief other than 'labels and conclusions' devoid of facts and a complaint containing 'conclusory allegations' will not survive dismissal for failure to state a claim." Seibert, 680 F. App'x at 840 (quoting Ashcroft, 556 U.S. at 678, 129 S. Ct. 1937). Here, Plaintiff presented conclusory allegations without any supporting facts. *See* ECF No. 5 at 14. The complaint asserts that Defendant Hicks had certain duties, but fails to assert how Defendant Hicks did not fulfill those duties. *Id.* at 13. Counts II and III are nothing more than "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements," and are insufficient. 680 F. App'x at 840 (quoting Ashcroft).

In light of this recommendation, there is no need to address Defendant's assertion of qualified immunity. The complaint does not establish a constitutional violation on the part of Defendant Hicks. "To overcome a qualified immunity defense where the defendant acted within his discretionary authority, the plaintiff must show that the defendant's actions not only violated one or more constitutional rights, but also that it was clearly established at the time that those specific actions did so." Powell v. Snook, 25 F.4th 912, 920 (11th Cir. 2022). Plaintiff has not identified any specific actions or omissions of Defendant Hicks and, thus, has not shown that Defendant Hicks violated the constitutional rights of Mr. Ferrell. Counts II and III against Defendant Hicks should be dismissed.

**5. Counts V and VII against Defendant FDOC**

**A. Wrongful Death Claim**

The FDOC is the only party named in counts V and VII. ECF No. 5 at 17, 25. Defendant seeks the dismissal of these two counts for two reasons: (1) lack of standing and (2) failure to state a cause of action. Additionally, Defendant asserts it is entitled to sovereign immunity. ECF

No. 19 at 14. Defendants point out that this case was brought by Plaintiff who identified "himself as 'Executor de son Tort of the Estate of Larian Ferrell . . .'" ECF No. 19 at 14 (quoting ECF No. 5 at ¶5). Defendants contend that "[a] person who presumes to act on behalf of an estate but without authority is known as an executor de son tort." ECF No. 19 at 14. Because Plaintiff was not "properly appointed as personal representative of the Estate of Larian Ferrell," Defendants contend that the Wrongful Death claim should be dismissed for lack of standing. *Id.* at 15.

In response, Plaintiff contends that the "Decedent's father is in the process of being duly appointed as the personal representative of the estate." ECF No. 23 at 13. Plaintiff argues that he is "entitled to proceed as an Executor de Son Tort[5] prior to being appointed as the personal representative" and the motion to dismiss should be denied.

Federal Rule of Civil Procedure 9 provides that "[e]xcept when required to show that the court has jurisdiction, a pleading need not allege:

---

[5] "The literal meaning of this term is that the person is 'an executor of his own wrong.'" Albritton v. Estate of Albritton, 731 So. 2d 154, 156 (Fla. 1st DCA 1999) (citing Black's Law Dictionary, p. 448 (6th Ed.1990)). "An executor de son tort is subject to all of the liabilities of a duly appointed personal representative but is not entitled to any of the privileges." Johnston v. Thomas, 93 Fla. 67, 111 So. 541 (Fla. 1927) (cited in Albritton, 731 So. 2d at 156).

(A) a party's capacity to sue or be sued; (B) a party's authority to sue or be sued in a representative capacity." Fed. R. Civ. P. 9(a)(1). The failure to clearly allege Plaintiff's capacity to sue in the complaint is not determinative. Moreover, as discussed below, the complaint did present an allegation as to capacity, although it is far from clear.

"Only a real party in interest has the capacity to bring a lawsuit." Tennyson v. ASCAP, 477 F. App'x 608, 610 (11th Cir. 2012). Federal Rule of Civil Procedure 17 governs who has the capacity to prosecute a civil case in federal court. When a party is acting in a representative capacity, the determination is made pursuant to "the law of the state where the court is located . . . ." Fed. R. Civ. P. 17(b)(3).

"Florida's Wrongful Death Act permits a decedent's estate to recover damages when the death 'is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person . . . and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued." Gubanova v. The Blackstone Grp. L.P., No. 12-22319-CIV, 2013 WL 12064500, at *2 (S.D. Fla. Feb. 25, 2013) (quoting Fla. Stat. § 768.19). "An action to recover damages under the Act must be brought by the decedent's personal representative."

Gubanova, 2013 WL 12064500, at *2 (quoting Fla. Stat. § 768.20).[6] "Although the Act provides no further definition of 'personal representative,' Florida's Probate Code instructs that the 'duties and powers of a personal representative commence upon appointment.'" Gubanova, 2013 WL 12064500, at *2 (quoting Fla. Stat. § 733.601 (emphasis added). "Courts routinely look for some judicial or administrative decree or letter of appointment before recognizing an individual as the personal representative of an estate." 2013 WL 12064500, at *2. Generally, "an individual must petition and receive letters of administration from the Florida Probate Court." 2013 WL 12064500, at *2 (citing Fla. Stat. § 733.202; Fla. Prob. R. 5.200, 5.235).

Here, Florida law governs the question of standing and, in particular, whether Plaintiff "possesses the authority to bring a wrongful-death action in this Court." Gubanova, 2013 WL 12064500, at *3 (finding plaintiff did not demonstrate that the State of Florida had recognized her as personal representative or that Russia had granted her authority as personal

[6] In relevant part, the statute provides: "The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death." Fla. Stat. § 768.20.

representative and she had obtained a letter of ancillary administration in Florida, and requiring plaintiff to amend her complaint). "Under Florida law the only party who has the capacity to sue on behalf of an estate is the duly appointed legal representative of the estate." Tennyson, 477 F. App'x at 611 (affirming dismissal of antitrust action brought by composer's daughter because she lacked "the capacity to bring a lawsuit against the defendants on behalf of the estate").

In this case, the Court is confronted with conflicting assertions. Plaintiff responded to the motion to dismiss by stating that "Mr. Ferrell, the Decedent's father is in the process of being duly appointed as the personal representative of the estate." ECF No. 23 at 13. The complaint, however, made the allegation that "Plaintiff, Leroy Ferrell, as the Personal Representative of the Estate of Larian Ferrell seeks to recover damages, which are allowed under the Wrongful Death Act . . . ." ECF No. 5 at 20. That allegation suggests that Plaintiff Leroy Ferrell had already been appointed the Personal Representative. Moreover, in the five months since filing the response, ECF No. 23, to the motion to dismiss, Plaintiff has offered no further clarification as to those conflicting statements.

Nevertheless, it is assumed that the response to the motion to dismiss is the most accurate statement. When Defendant raise the question of Plaintiff's appointment, Plaintiff did not affirmatively demonstrate that the appointment had been made. Instead, Plaintiff responded by indicating only that an appointment was forthcoming. That statement is in line with the caption of this case which identified Plaintiff as "executor de son tort."

The Eleventh Circuit has provided guidance as to this issue, stating that the "better course of action" is to "stay the proceedings to await" when it is almost certain that plaintiff will be appointed as the personal representative of the estate. Glickstein v. Sun Bank/Miami, N.A., 922 F.2d 666, 671 (11th Cir. 1991), abrogated on other grounds by Saxton v. ACF Indus., Inc., 254 F.3d 959 (11th Cir. 2001). Thereafter, the plaintiff should move to amend the complaint to substitute the proper personal representative. Glickstein, 922 F.2d at 671; *see also* Silas v. Tony, No. 20-61480-CIV, 2021 WL 5893162, at *2 (S.D. Fla. Nov. 8, 2021) (declining "supplemental jurisdiction over the remaining state law claims and" remanding the case "to state court to allow time for Plaintiff to" be appointed personal representative); Starling v. R.J. Reynolds Tobacco Co.,

845 F. Supp. 2d 1215, 1231 (M.D. Fla. 2011), adhered to on denial of reconsideration (Dec. 22, 2011) (finding that "[w]hen there is no issue related to the cause of death, a personal representative should be allowed to amend an Engle Smoker's personal injury complaint in its entirety to state a cause of action for wrongful death"); Capone v. Philip Morris USA, Inc., 116 So. 3d 363, 377 (Fla. 2013) (concluding that plaintiff should have been allowed to "amend her complaint and substitute herself as a party in her capacity as personal representative of [her husband's] estate"). Here, there is no indication that Plaintiff will not be appointed personal representative, and Plaintiff indicates that process is being pursued. In light thereof, it is recommended that the motion to dismiss the Wrongful Death Act claim (Count V) be denied, but that this case be **STAYED** until Plaintiff demonstrates that he has been appointed Personal Representative of the Estate of Larian Ferrell and seeks leave to file an amended complaint to present the Wrongful Death Act claim.

**B. Negligence Claim**

The FDOC seeks dismissal of count VII on the basis that the complaint fails to allege "facts supporting the assertion that FDOC breached its specific duty to Decedent." ECF No. 19 at 16. Even if such

facts were alleged, Defendant asserts its entitlement to sovereign immunity because its actions involved "discretionary functions." *Id.*

In response, Plaintiff argues that the State of Florida expressly waived sovereign immunity in tort actions under FLA. STAT. § 768.28. ECF No. 23 at 14. Because negligence is a traditional tort, Plaintiff says the motion to dismiss should be dismissed.

Further, Plaintiff contends that sufficient allegations are presented within the complaint to support the negligence claims. *Id.* at 13. The response argues that "Plaintiff has alleged that Defendant breached its duty to Mr. Ferrell by understaffing Cross City Correctional Institution, failing to adequately train staff, failing to implement safe prison policies, and ignoring inmate-on-inmate violence, even after learning of an inmate's death." *Id.*

Under Florida law, individual "officers, employees, and agents" have immunity unless acting "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28 (9)(a). "The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional

officers is by action against the governmental entity, or the head of such entity in her or his official capacity . . . ." Fla. Stat. § 768.28 (9)(a). Here, there are no allegations of bad faith or malicious purpose, so Florida law's "exclusive remedy" is an action "against the relevant governmental entity for any injury caused by an officer acting in the course of his employment.'" Hooks v. Sapp, No. 5:18-CV-114-RH/MJF, 2020 WL 5239120, at *4 (N.D. Fla. Aug. 14, 2020), report and recommendation adopted, No. 5:18-CV-114-RH-MJF, 2020 WL 5237518 (N.D. Fla. Sept. 2, 2020) (finding the plaintiff could "proceed only against the FDC or the head of that agency" and citing Prieto v. Malgor, 361 F.3d 1313, 1316 n.3 (11th Cir. 2004) (per curiam); McGhee v. Volusia Cty., 679 So. 2d 729, 733 (Fla. 1996); Ortega v. Schramm, 922 F.2d 684, 693 (11th Cir. 1991); Burks v. Beary, 713 F. Supp. 2d 1350, 1361 (M.D. Fla. 2010)). Thus, Plaintiff is correct that the State of Florida has waived sovereign immunity for tort claims to be brought against the FDOC.

However, that is not the end of the story, because over 40 years ago, the Florida Supreme Court "carved out an exception to the waiver of immunity for 'policy-making, planning or judgmental government functions.'" Dep't of Health & Rehab. Servs. v. B.J.M., 656 So. 2d 906, 911

(Fla. 1995) (quoting Commercial Carrier Corp. v. Indian River Cnty., 371 So.2d 1010, 1020 (Fla.1979)). "In other words, despite the rather straightforward and broad scope of the waiver of sovereign immunity in section 768.28, [the Court] held that certain 'discretionary' governmental functions remain immune from tort liability. B.J.M., 656 So. 2d at 911 (citing Commercial Carrier Corp., 371 So.2d at 1022); *see also* Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1117 (11th Cir. 2005)[7] (quoting Lewis v. City of St. Petersburg, 260 F.3d 1260, 1266 (11th Cir. 2001) (citing Dep't of Health & Rehabilitative Servs. v. Yamuni, 529 So.2d 258, 260 (Fla. 1988)).

> As the Supreme Court of Florida has explained recently, "if a duty of care is owed, it must then be determined whether sovereign immunity bars an action for an alleged breach of that duty. In making this assessment, it is necessary to ascertain the character of the allegedly negligent governmental act or omission. As this Court has determined, basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity." *Pollock v. Fla. Dep't of Highway Patrol*, 882 So.2d 928, 933 (Fla. 2004) (citation omitted).

---

[7] "A discretionary function, under Florida law, is one in which 'the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning.'" Henderson v. Bowden, 737 So.2d 532, 538 (Fla. 1999) (citation and internal quotation marks omitted) (quoted in Cook, 402 F.3d at 1117-18).

Cook, 402 F.3d at 1117.

"Under Florida law, an 'operational' act is 'one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented,' while discretionary acts involve 'an exercise of executive ... power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning.'" Kaisner v. Kolb, 543 So. 2d 732, 737 (Fla. 1989) (quoted in Cooper v. Rutherford, 828 F. App'x 619, 623 (11th Cir. 2020)). Put another way, the distinction is "between 'planning' decisions (which are immune) and 'operational' decisions (which are not)." Joseph as next friend of Est. of Joseph v. Chronister, No. 20-11073, 2021 WL 4739608, at *4 (11th Cir. Oct. 12, 2021) (citing Com. Carrier Corp. v. Indian River Cnty., 371 So. 2d 1010, 1022 (Fla. 1979)). For example, "once a decision had been made to install a traffic light and a traffic sign at an intersection, their maintenance was 'operational level activity.'" Joseph, 2021 WL 4739608, at *4 (quoting Com. Carrier Corp., 371 So. 2d at 1022).

The FDOC contends that the actions challenged in this case amount to discretionary functions and, thus, immunity applies. ECF No. 19 at 16-

17. Plaintiff does not address this aspect of Defendant's motion. ECF No. 23 at 13-14.

To determine whether the discretionary function bars this claim, a two-prong analysis is utilized. Lewis, 260 F.3d at 1265; Gelbard v. City of Miami, Fla., 845 F. Supp. 2d 1338, 1340 (S.D. Fla. 2012). "The first prong analyzes whether the plaintiff alleged sufficient facts under which the [FDOC], if a private entity, would be liable in accordance with the general laws of Florida." Gelbard, 845 F. Supp. 2d at 1340 (citing Lewis). "[If the plaintiff meets the first prong, then the court must analyze whether the 'discretionary' function exception to Florida's waiver of sovereign immunity nonetheless bars tort liability on the claim." 845 F. Supp. 2d at 1340.

Plaintiff's negligence claim is premised upon a conclusory and unsupported assertion. Plaintiff simply contends that the FDOC "had a duty to provide Decedent with protection, security checks, safe custody and appropriate and timely medical care and assistance." ECF No. 5 at 25. "FDOC knew or should have known Decedent's needs were not being met," and its "refusal to provide care to Decedent was a breach of its duty to provide for Decedent's safety . . . ." *Id.* In doing so, Plaintiff alleged only the elements of the claim and failed to identify or explain how the FDOC

did not uphold its duty to provide for Mr. Ferrell's safety. Because specific facts are not alleged to support the negligence claim, *see* ECF No. 5 at 25, it is insufficient. Am. Honda Motor Co. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005) (finding that conclusory allegations, "without any supporting factual assertions, are insufficient"); Silver Crown Invs., LLC v. Team Real Est. Mgmt., LLC, 349 F. Supp. 3d 1316, 1325-26 (S.D. Fla. 2018) (dismissing breach of contract claim based on conclusory allegations).

Notwithstanding, the complaint also alleged "common allegations of fact" which Plaintiff incorporated into Count VII. *Id.* Plaintiff generally alleged the "FDOC did not have a sufficient inmate classification policy; they did not have a sufficient safety, security and protection policy; they did not have sufficient security checks; and they did not have sufficient security training." ECF No. 5 at 4. It is generally alleged that the FDOC "knew that there was a serious need for more staff, better training of correctional officers, and better policies and procedures regarding the safety and security of inmates at Cross City Correctional Institution and at other correctional facilities in the state of Florida." *Id.* at 5. Plaintiff contends the Decedent's "life could have been saved" if FDOC had "implemented

appropriate policies and procedures regarding the protection, security checks, and safety and security of inmates." *Id.* at 6. Plaintiff alleged there was a "policy to short-staff corrections security positions." *Id.*

The complaint is long on rhetoric and short on facts; it alleges legal conclusions, not facts. For example, the "Complaint fails to allege any specific training or subject matter that Defendant failed to provide" its correctional officers. 845 F. Supp. 2d at 1341 (holding that plaintiff did not plead sufficient facts to support the negligence claim). Nevertheless, the allegations reveal that the negligence claim is based on policies, or the failure to create policies, of the FDOC. Decisions concerning whether to create a policy and the wisdom of such policy decisions are protected by sovereign immunity. Ermini v. Scott, 249 F. Supp. 3d 1253, 1281 (M.D. Fla. 2017) ("Discretionary functions include functions such as 'development and planning of governmental goals and policies'") (quoting Lewis, 260 F.3d at 1266); Wilson v. Miami-Dade Cty., 370 F. Supp. 2d 1250, 1255 (S.D. Fla. 2005) (finding that challenges to "the reasonableness of basic policy decisions made by" the Miami-Dade Police Department are barred by the discretionary function exception and sovereign immunity applies); Davis v. State, Dep't of Corr., 460 So. 2d 452, 453 (Fla. 1st DCA 1984)

(noting that '[t]he classification and placement of inmates within the prison system constitutes a discretionary planning level function" and sovereign immunity applies").

> An act is "discretionary" when all of the following conditions have been met: (1) the action involves a basic governmental policy, program, or objective; (2) the action is essential to the realization or accomplishment of that policy, program, or objective; (3) the action require[s] the exercise of basic policy evaluation[s], judgment[s], and expertise on the part of the governmental agency involved; and (4) the governmental agency involved possess [es] the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision.

Lewis, 260 F.3d at 1264 (quoting Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So. 2d 912, 918 (Fla. 1985) (explaining that "if all the questions can be answered in the affirmative, then the governmental conduct is discretionary and 'nontortious'"). Here, although Plaintiff's allegations of negligence are conclusory and unsupported by a clear statement of facts, it appears that the challenges raised are to a basic governmental function - the creation of policies which impact the safety and security of inmates. *See* ECF No. 5 at 6.

Security is essential to the function of the FDOC, and creating such policies necessarily includes reliance on the wisdom and expertise of

prison officials. That is why courts are required to give "deference to the informed discretion of prison administrators" when they must "make the difficult judgments concerning institutional operations" which impact "penological objectives" such as "security and order." Jones v. N. Carolina Prisoners' Lab. Union, Inc., 433 U.S. 119, 128, 97 S. Ct. 2532, 2539, 53 L. Ed. 2d 629 (1977).

Moreover, courts have more specifically held that negligent "failure to train" claims comprise a "discretionary function" and, thus, the FDOC is immune from liability. 845 F. Supp. 2d at 1341 (holding that decisions involving the training of a city's "police force are considered a discretionary function" and finding that the city has sovereign immunity); Lewis, 260 F.3d at 1266 (affirming the district court's dismissal of a negligent training claim because such acts are discretionary governmental functions immune from tort liability); Cook, 402 F.3d at 1117 (holding that "negligent failure to train and supervise MCDC employees" claim was barred by Florida's sovereign immunity law). "The determination of the content of a training program is a discretionary function for the city which is afforded sovereign immunity." Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005) (citing Lewis, 260 F.3d at 1266). "In addition, the number and placement of

supervisory personnel constitutes a discretionary decision" and the FDOC has sovereign immunity from Plaintiff's negligence claim. Davis, 460 So. 2d at 453.

There are no allegations that the FDOC failed to comply with, or implement, staffing or training requirements that were already established. Rather, Plaintiff complains only that the staffing and training policies were insufficient. Such allegations concern "planning" decisions which are discretionary, and not "operational" decisions which are not protected by sovereign immunity. For all these reasons, Plaintiff's negligence claim should be dismissed.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the amended motion to dismiss, ECF No. 19, be **GRANTED in part and DENIED in part**. The motion to dismiss should be **GRANTED** as to all claims brought against the John Doe Defendants and Defendant Hicks, and the state law negligence claim (Count VII) brought against the FDOC should also be **DISMISSED**. It is further **RECOMMENDED** that the motion to dismiss the Wrongful Death Act claim (Count V) be **DENIED**, but that this case be **STAYED** until Plaintiff demonstrates that he has been

appointed Personal Representative of the Estate of Larian Ferrell and seeks leave to file an amended complaint to present the Wrongful Death Act claim, and this case should be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on April 21, 2022.

S/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**