IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEROY FERRELL, as Personal Representative
of the Estate of LARIAN FERRELL, and on
behalf of survivors, LEROY FERRELL and
JULIE FERRELL,

    Plaintiff,

CASE NO. 4:21cv397-WS-MAF

v.

FLORIDA DEPARTMENT OF CORRECTIONS,
RICKY DIXON, in his official capacity as Secretary,
and CENTURION OF FLORIDA, LLC,
a health services Corporation,

    Defendants.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LEROY FERRELL, as Personal Representative of the ESTATE OF LARIAN FERRELL, and on behalf of survivors, LEROY FERRELL and JULIE FERRELL, by and through the undersigned counsel, hereby sues the Defendants, FLORIDA DEPARTMENT OF CORRECTIONS ("FDOC"), RICKY DIXON in his official capacity as Secretary, and CENTURION OF FLORIDA, LLC, and alleges:

### Jurisdiction and Venue

1. This is an action for damages above the jurisdiction requirements of this Court.

2. This Court has jurisdiction over the federal law claims raised pursuant to Article V, Section 5(b) of the Florida Constitution.

3. Venue is proper in this Court as one or more defendants are found in this county.

4. All conditions precedent to the filing of this action have either been performed or waived, including notice to the relevant Defendants as required under § 768.28, Florida Statutes.

## Parties

5. Plaintiff, Leroy Ferrell, sues as Personal Representative of the Estate of Larian Ferrell, an inmate in the custody of the Florida Department of Corrections housed at Cross City Correctional Institution located in Cross City Florida, a correctional institution operated by the Florida Department of Corrections, on behalf of the Estate and Leroy Ferrell, father of the Decedent and Julie Ferrell, mother of the Decedent.

6. At all times material hereto, Defendant Florida Department of Corrections has been a subdivision of the State of Florida under §768.28, Florida Statutes which governs state prisons in Florida and is headquartered in Tallahassee, Florida.

7. At all times material to this action, Defendant MARK INCH was the Secretary of the Department of Corrections at the time of the incident and was sued in his official capacity. RICKY DIXON, is now the Secretary of the Department of Corrections and sued in his official capacity.

8. At all times material to this action, Defendant CENTURION OF FLORIDA, LLC., ("Centurion") was a health services corporation contracting with the Florida Department of Corrections to provide comprehensive medical services to inmates housed at Cross City Correctional Institution.

## Common Allegations of Fact

9. At all times material to this action, Larian Ferrell was an adult citizen of the United States of America residing in Cross City, Florida, entitled to exercise all of the rights and

privileges provided by the Constitutions of the State of Florida and the United States of America.

10. On or about May 18, 2019 Decedent Larian Ferrell was incarcerated at Cross City Correctional Institution in Cross City, Florida awaiting his release from prison in 2021.

11. Mr. Ferrell was housed in a dormitory with other prisoners.

12. Cross City Correctional Institution has been one of the leaders in forms of inmate-on-inmate assault.

13. On or about May 18, 2019, Mr. Ferrell was attacked by an inmate and was fatally injured as a result of stab wounds to the stomach.

14. On or about May 18, 2019, Decedent, Larian Ferrell, was brutally attacked by another inmate due to the correctional facility being understaffed and as a result of the lack of policies and procedures and security in place to protect the inmates.

15. Mr. Ferrell's attacker would not have been able to fatally injure Mr. Ferrell except for constitutional violations by prison officials, including medical officials.

16. At all times material to this action, Cross City Correctional Institution was seriously understaffed.

17. At all times material to this action, prison employees lacked training in safety and security protocols. Additionally, security checks were not timely performed.

18. At all times material, the conditions of the time of Mr. Ferrell's fatal injury were out of compliance with written policies and training.

19. Upon information and belief, FDOC correctional officers did not come to Mr. Ferrell's aid in a timely manner neither when he was aware that he was being attacked nor when he witnessed Mr. Ferrell suffering from a serious medical condition.

20. Upon information and belief, when medical staff were notified of the serious condition, they did not respond in a timely manner.

21. Medical staff failed to respond on an emergency basis.

22. Lifesaving protocols were not initiated in a timely manner.

23. Upon information and belief, there was a lack of responsiveness from the medical staff assist with the treatment of Decedent after the attack and stabbing.

24. The Florida Department of Corrections is the third largest state prison system in the country, with a current budget of $2.7 billion.

25. Inmate housing and security decisions are supposed to be made by FDOC employees who held supervisory roles, as well as security and classification officers.

26. Upon information and belief, it is believed that discovery will reveal that during the relevant period of time, all Defendants knew that FDOC did not have a sufficient inmate classification policy; they did not have a sufficient safety, security and protection policy; they did not have sufficient security checks; and they did not have sufficient security training;

27. Inmate homicides have been a systemic issue according to statistics compiled by the Florida Department of Corrections. From the period of 2015 to 2021, there have been a total of 90 inmate deaths that were determined to be homicides by the Medical Examiner.

28. Pursuant to the FDOC Inmate Mortality Rate, there was 1 death that occurred after the death of Larian Ferrell that occurred at Cross City Correctional Institution from 2018 to 2020.

29. On the date before the death of Mr. Ferrell, another inmate was killed by officers after they led the inmate from the surveillance cameras and beat him to death and tried to conceal the incident.

30. Pursuant to FDOC Annual Report on Gang Activity, there were 12,262 inmates who were members of a "security threat group" (STG) in 2017-2018 and 16,739 in 2018-2019 at the time of the attack. Which represents a 25% increase in one year.

31. The facts of these deaths and gang affiliation increase were such that the Florida Department of Corrections, through its employees, agents, and policymakers and supervisors knew that use of inmate violence, inmate harassment, and/or excessive violence against inmates was occurring and correctional officers, staff and supervisors were culpable in inmate deaths and other violations of the laws and constitution of the United States.

32. Thus, the Florida Department of Corrections knew that there was a serious need for more staff, better training of correctional officers, and better policies and procedures regarding the safety and security of inmates at Cross City Correctional Institution and at other correctional facilities in the state of Florida.

33. Had FDOC implemented appropriate policies and procedures regarding the protection, security checks, and safety and security of inmates, Decedent, Larian Ferrell's life could have been saved.

34. Had there been a policy for appropriate medical kits, equipment and devices to be placed in each dorm, Decedent, Larian Ferrell's life could have been saved.

35. Defendants cooperated in a policy to short-staff corrections security positions such that there was not a full, adequate and or competent staff in the prison dormitories, including the Cross City Correctional Facility on the day of the incident.

36. Defendants, FDOC and Centurion cooperated in a policy to short-staff medical personnel positions such that there was not a fully, adequate and or competent medical staff at the prison facilities, including Cross City Correctional Institution on the day of the incident.

37. Short-staffing positions was a method by which the Department created pools of money which they could use for other purposes by converting payroll funds.

38. Because the Department cut so many correctional officers, security systems at Cross City Correctional Institution were dangerously low and instances of violence increased.

39. Prior to the subject incident, the Defendants allowed inmates to travel freely throughout the correctional facility when in fact, the inmates were not authorized to do so.

40. The Defendants knew about the unauthorized visits of inmates and did nothing about it.

41. Prior to the incident complained of, the Defendants cooperated in a policy to permit, facilitate, ratify, condone the concealing or covering up suspicious circumstances surrounding inmate violence and deaths.

42. Defendant FDOC ratified or condoned the concealing or covering up of violence against inmates and suspicious circumstances surrounding inmate deaths, which made further deaths more likely.

43. Defendant FDOC cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of failing to conduct effective investigations and/or conduct investigations in good faith in regard to inmate deaths.

44. Defendant FDOC cooperated in custom or a policy to permit, facilitate, ratify, and condone the practice of destroying evidence or failing to preserve evidence in regard to inmate deaths.

45. Upon information and belief, Centurion was subjected to many malpractice claims and complaints as a result of the lack of care and failure to adequately treat inmates.

46. The circumstances involving the death of Larian Ferrell violated the Eighth Amendment.

47. The Defendants each acted to violate Larian Ferrell's constitutional rights or failed to intervene to prevent the violation of his rights, though able.

48. Defendants caused the Decedent to suffer severe physical and mental injuries and ultimately, death.

49. Mr. Ferrell's life could have been saved if the officer, medical staff and supervisor had acted reasonably in response to the known serious medical condition that cost Mr. Ferrell his life.

**CAUSES OF ACTION**

**Count I**

**42 U.S.C. § 1983: Custom or Policy of Failure to Protect**
**(Ricky Dixon)**

50. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

51. Plaintiff is entitled to relief against Defendant Ricky Dixon in his official capacity, pursuant to 42 U.S.C. §1983 and the Eighth Amendment of the United States Constitution.

52. Prior to May 18, 2019 Defendants, developed, enforced, maintained ratified and/or condoned policies or customs which resulted in deliberate indifference to constitutional rights of Cross City Correctional Institution inmates, which ultimately caused the violation of Decedent, Mr. Ferrell's constitutional rights.

53. Defendant maintained a policy and/or custom of ignoring and disregarding the physical threats, intimidations and actual acts of violence occurring between inmates, inadequately and improperly investigating complaints of correctional officer and inmate misconduct were allowed, tolerated, and not reprimanded by Defendants. Thus, Defendants failed to discourage constitutional violations perpetrated by its correctional officers and ratified improper conduct and failed to protect inmates, which facilitated the future acts of unlawful violence substantially certain to occur.

54. Defendants have a history of failing to supervise inmates and/or implement policies designed to protect the life and safety of inmates. Defendants also have a history of showing a callous disregard for the life and safety of inmates under its supervision and ratifying Constitutional rights violations by their officers. Defendant also has a history of failing to appropriately discipline inmates, failing to correct officer and inmate misconduct, and failing to properly train or supervise correctional officers; thus, exhibiting deliberate indifference to the constitutional rights of employees and inmates at correctional facilities under the control of the Florida Department of Corrections, specifically, Decedent, Mr. Ferrell, whose constitutional rights were violated pursuant to the Eighth Amendment of the United States Constitution, and he was ultimately deprived of his bodily integrity.

55. Defendants ratified and/or condoned the violations of the Civil Rights Act, 42 U.S.C. §1983, Eighth Amendment of the United States Constitution, or in the alternative the violations were so common, that it became custom. Furthermore, Defendants knew such violations were occurring, but was deliberately indifferent to doing anything about it.

56. As a result of the above-mentioned policies and customs, Defendants believed that their wrongful actions would not be subject to proper monitoring by supervisors, and that misconduct would not be subject to investigation or sanction but would instead be tolerated by Defendants.

57. The above fact denotes a deliberate indifference on the part of Defendant Ricky Dixon, as policy-makers and custom enforcers, to upholding the constitutional rights of inmates at Cross City Correctional Institution including Decedent, Larian Ferrell, in particular the right to be free from violent attacks from other inmates, which actually and proximately caused violations of Decedent, Larian Ferrell's constitutional rights guaranteed by the Eighth Amendment to the United States Constitution, in particular fatally injuring Decedent and causing his death, depriving him of his right to bodily integrity.

58. As a direct, proximate, and foreseeable result of the Constitutional violations and misconduct of Defendant, Ricky Dixon's actions and/or omissions, Decedent Mr. Larian Ferrell sustained brutal and severe physical injuries resulting in his untimely and death.

59. As Plaintiff has been obliged to retain counsel for redress, pursuant to 42 U.S.C. 1988, Plaintiff is entitled to reasonable costs of such representation, as well as costs.

WHEREFORE, Plaintiff seeks damages as noted below.

# Count II
## 42 U.S.C. § 1983: Deliberate Indifference (Ricky Dixon)

60. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

61. Plaintiff is entitled to relief against Defendant because while acting under color of law, he violated Mr. Ferrell's rights under the Eighth Amendment. Defendants by virtue of their responsibilities within the Department of Corrections and as a supervisor was responsible for overseeing the actions of the correctional officers and inmates at Cross City Correctional Institution.

62. Defendant had a duty to implement and employ policies and procedures of the Florida Department of Corrections that would ensure the health and safety of inmates as well as employees. Defendant also had a duty to protect Decedent Larian Ferrell from injury and death and to protect inmates from avoidable and senseless injuries and death, in addition to providing inmates with constitutionally safe living conditions and access to medical care, including emergency care.

63. Defendant was charged with the constitutional duty to hire, train, supervise, and discipline, employees and other correctional officers in such fashion to ensure they kept inmates and employees safe and protected at the subject correctional facility. Defendant was also in charge with the duty to train staff to comply with standard policies and procedures in areas such as: correctional officer compliance and safety, inmate compliance and safety, the harassment and assault of inmates, safety and security of inmates, inmate protection including, Larian Ferrell.

64. Defendant was aware of the facts that gave rise to an inference of a risk of serious harm to Mr. Ferrell and Defendants reasonably drew the inference, yet took no action to abate the harm.

65. Defendant acted with deliberate indifference to a known risk of harm in hiring, training, supervising the correctional officers.

66. As a direct result of Defendant's deliberate indifference to Mr. Ferrell's constitutional rights, he suffered severe physical injuries and death.

67. As Plaintiff has been obliged to retain counsel for redress, pursuant to 42 U.S.C. 1988, Plaintiff is entitled to reasonable costs of such representation, as well as costs.

   WHEREFORE, Plaintiff seeks damages as noted below.

**Count III**
**42 U.S.C. § 1983: Deliberate Indifference to Serious Medical Needs/Failure to Treat: Centurion of Florida, LLC**

68. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

69. Defendant Centurion of Florida, LLC., had a duty under the Constitution of the United States of America to medically treat inmates and provide adequate medical care to those inmates, including Decedent Mr. Ferrell, in the custody of Cross City Correctional Institution.

70. Defendant had a duty under the Eighth Amendment to treat inmates and provide medical treatment and not to be deliberately indifferent to the known serious medical needs of inmates in the custody of Cross City Correctional Institution.

71. While incarcerated at Cross City Correctional Institution, Decedent Larian Ferrell suffered from serious medical need to wit, the need for urgent care for the wounds he sustained as a result of the stabbing, the need to urgently be treated by a doctor, and/or the need to be timely

transferred to the hospital, in part, more fully above, which, if not properly and timely attended to, would and did leave Decedent with serious injuries and ultimately led to Decedent's tragic and untimely death.

72. Defendant failed to adequately treat Mr. Ferrell. The Defendant was aware of Decedent's medical needs and the need to urgently treat the severe injuries, which would have been obvious to a lay person and which, if not properly and timely attended to, would leave Mr. Ferrell with serious injuries or death. Defendant was aware of the need for medical treatment and emergency treatment of inmates, including Decedent Mr. Ferrell pursuant to testimony from Cross City Correctional Institution employees and inmates stating that timely medical care has been an issue at Cross City Correctional Institution as well as a lack of readily available medical kits and devices in each dorm in the event of medical emergencies such as the medical emergency in this instance.

73. Decedent's obvious and severe injuries were known or knowable to Defendant at all times material to this action. Despite their knowledge of the serious risk to Decedent's health, Defendants, intentionally or through deliberate indifference, failed or refused to medically treat or provide Decedent with adequate and timely medical care. Had Defendants ensured that Decedent was properly treated in a timely manner, Mr. Ferrell's injuries and death could have been avoided.

74. As stated more specifically, in part, above, Defendant acted with deliberate indifference as to Decedent's serious medical condition when they failed to treat Decedent and/or provide medical treatment to Mr. Ferrell, despite having actual knowledge that Decedent needed

medical treatment and attention and/or despite the fact that they should have been aware of this, and Decedent died as a result, as described in part more fully above.

75. Defendant misused its power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law. The violation of Decedent's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. § 1983.

76. The foregoing actions of Defendant as set forth in part above constituted a deliberate indifference to severe risks to Decedent's life, health and safety.

77. Defendants acted with deliberate indifference in the failure to implement a policy and/or implementing an inadequate policy for incidents like that described herein when it was obvious that the consequences of not implementing a policy would result in the deprivation of civil rights. Defendants also failed to treat Decedent and/or provide Decedent with adequate medical care for his serious medical needs. These policies or lack thereof were the moving force behind the constitutional deprivations to Decedent.

78. Defendants acted with deliberate indifference in the failure to implement a policy and/or implementing an inadequate policy regarding the response time for inmate medical treatment for incidents like that described herein when it was obvious that the consequences of not implementing a policy would result in the deprivation of civil rights. Defendants also failed to treat Decedent and/or provide Decedent with adequate medical care for his serious medical needs. These policies or lack thereof were the moving force behind the constitutional deprivations to Decedent.

79. Defendants acted with deliberate indifference in the failure to implement a policy and/or implementing an inadequate policy regarding the availability of medical kits and/or devices in dorms in the event of medical emergencies. Defendants also failed to treat Decedent and/or provide Decedent with adequate medical care for his serious medical needs. These policies or lack thereof were the moving force behind the constitutional deprivations to Decedent.

80. As a direct result of Defendant's deliberate indifference to Decedent Mr. Ferrell's right to receive medical treatment, he suffered brutal and severe physical injuries and death.

81. As Plaintiff has been obliged to retain counsel for redress, pursuant to 42 U.S.C. 1988, Plaintiff is entitled to reasonable costs of such representation, as well as costs.

   WHEREFORE, Plaintiff seeks damages as noted below.

### Count IV
### Wrongful Death under State Law (Florida Department of Corrections)

82. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

83. In the alternative, Plaintiff is entitled to relief against Defendant Department of Corrections under the Florida Wrongful Death Act.

84. At all times material hereto, Florida Department of Corrections owed a legal duty to provide non-negligent care and custody to inmates, including Decedent Larian Ferrell. Additionally, FDOC owed a duty to inmates as well as correctional officers and other staff and to Decedent Larian Ferrell, to ensure that FDOC, Cross City Correctional Institution, Ricky Dixon and its agents and employees would perform their duties in such a way as to avoid placing Decedent Larian Ferrell in unreasonable danger of serious injury or death. Furthermore, Defendant

FDOC owed a duty to ensure that its agencies would act in a prudent and reasonable manner with regard to the care, health and safety of inmates, including Decedent Larian Ferrell.

85. Florida Department of Corrections breached that duty owed to Decedent Larian Ferrell in various ways including but not limited to, the following:

    a) It failed to ensure that FDOC, Ricky Dixon, the Secretary of FDOC, Cross City Correctional Institution had established reasonable and appropriate policies to accomplish the mission of FDOC of providing a continuum of services to meet the needs of those entrusted in their care, creating a safe and professional environment with the outcome of reduced violence and victimization, safer communities and an emphasis on the premium of life;

    b) It failed to ensure that FDOC, Ricky Dixon the Secretary of FDOC, Cross City Correctional Institution, had established reasonable and appropriate policies regarding the hiring, retention, discipline and promotion of corrections personnel;

    c) It failed to ensure that FDOC, Ricky Dixon the Secretary of FDOC, Cross City Correctional Institution, had established reasonable and appropriate policies regarding the discipline of inmates;

    d) It failed to ensure that FDOC, Ricky Dixon, the Secretary of FDOC, Cross City Correctional Institution and the Wardens, adequately trained, supervised, instructed and/or monitored Cross City Correctional Institution employees regarding inmate interaction, inmate and corrections officer safety;

e) It failed to implement adequate training, policies and procedures related to supervision, discipline, hiring, screening, of its employees;

f) It failed to ensure that its employees and agents in supervisory roles established reasonable and appropriate policies and procedures governing the manner in which Cross City Correctional Institution personnel responded to inmates who needed medical treatment, including emergency medical treatment;

g) As a matter of facility design, it failed to ensure that the medical department or infirmary was placed in a reasonable location in an effort to facilitate timely responses to medical care and treatment, including emergencies;

h) It failed to ensure that medical kits and functional medical equipment was available in each of the prison dorms when it knew or should have known that inmates and correctional officers would need medical treatment;

i) It failed to ensure that all FDOC personnel complied with existing policies and procedures, if any, with regard to the use of excessive force against inmates;

j) It failed to take corrective action to prevent FDOC personnel and inmates under its control from exercising poor judgment and from implementing policies and procedure and staffing requirements in response to prior incidents involving inmate on inmate attacks and murders under FDOC's control and supervision.

k) It was careless and negligent in such other ways as may be identified during the course of discovery and/or trial.

86. Defendant FDOC is legally responsible for the violations of the legal duties of care by its agents and employees, under the doctrine of Respondeat Superior.

87. Defendant FDOC's negligent acts and omissions constitute proximate causes of the incident which resulted in serious injuries to and the death of Larian Ferrell.

88. As a direct and foreseeable result of the negligent, careless and wrongful conduct of Defendant Florida Department of Corrections, Mr. Ferrell suffered serious injuries and death.

89. Mr. Ferrell's survivors are entitled to receive the damages pursuant to the Wrongful Death Act under Florida law.

90. The Estate of Larian Ferrell has suffered and will continue to suffer damages into the future. As a result, Plaintiff, Leroy Ferrell, as the Personal Representative of the Estate of Larian Ferrell seeks to recover damages, which are allowed under the Wrongful Death Act, Fla. Stat. § 768.16 et seq., and include the following:

    (a) The past and future loss of Decedent's support and services to Julie Ferrell, his natural mother, and Leroy Ferrell his natural father;
    (b) Loss of the care, maintenance, support, services, companionship, advice, counsel, inheritance and other reasonable contributions of pecuniary and non-pecuniary value that the parents would have otherwise received during the Decedent's life had it not been for his untimely, tragic, and wrongful death;
    (c) The expense of medical care and funeral arrangements arising from the injury and death of the Decedent, Ferrell;
    (d) Loss of the Decedent's prospective net accumulations;
    (e) Loss of inheritable estate; and
    (f) Any and all other damages as specified in F.S. 768.21.

WHEREFORE the Plaintiff hereby sues the Defendant, and demands judgment against the Defendant for all damages recoverable under the laws of Florida and further demands a trial by jury on all issues so triable as of right.

## **Damages (Generally)**

91. At the time of his death, Larian Ferrell was 32 years of age. His mother and father with whom he shared bonds of genuine love and affection survive him. By reason of the wrongful acts and omissions of all Defendants, as heretofore alleged, Larian Ferrell's family has been forever deprived of his affection and their familial relationship with Mr. Ferrell.

92. Mr. Ferrell experienced excruciating physical pain and mental anguish as the inmate brutally attacked, struck and stabbed Decedent.

93. Plaintiff is entitled to recover from all Defendants, jointly and severally, all damages pursuant to laws of Florida and the United States Constitution in special recognition of the remedial purposes of 42 U.S.C. § 1983, the Civil Rights Act of 1871.

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests of the Court:

A. To find that Defendants' actions described herein are unlawful and violated rights of Plaintiff's Decedent under Constitutional and Statutory Law;

B. Compensatory damages for Plaintiff's physical injury, pain and suffering and emotional and psychological damages in an amount to be determined;

C. Punitive damages against the individual defendants;

D. Reasonable attorney's fees and costs under 42 U.S.C. § 1988 and other law;

E. Trial by jury on all counts so triable; and

F. That Plaintiff be granted any and all other damages and further relief, as this Court deems just and appropriate.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document is being served by electronic mail to all relevant counsel of record via the E-Filing Portal on this 10th day of June 2022.

/s/*Amber N. Hall*
AMBER N. HALL, ESQ.
**AMBER HALL LAW, PLLC**
Florida Bar No. 0103042
820 East Park Avenue, Building B
Tallahassee, FL 32301
Telephone: (850) 701-8850
Facsimile: (850) 701-8856
E: amber@amberhalllaw.com
E: legal@amberhalllaw.com
E: assist@amberhalllaw.com
E: support@amberhalllaw.com
*Attorney for Plaintiff*

> Liane S. LaBouef, Esq.
> HOWELL, BUCHAN & STRONG
> 2898-6 Mahan Drive
> Tallahassee, FL 32308
> Telephone: (850) 877-7776
> ***Counsel for Defendant Florida Department of Corrections, Ricky Dixon and Milton Hicks***
>
> Brian A. Wahl, Esq.
> Jacob Hanson, Esq.
> BRADLEY ARANT BOULT CUMMINGS LLP
> 1819 5th Avenue North

Birmingham, AL 35203
bwahl@bradley.com
tramsay@bradley.com
cmayfield@bradley.com
jhanson@bradley.com
***Counsel for Defendant Centurion of Florida, LLC***