# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | |
|---|---|
| LEROY FERRELL, as Personal Representative of the Estate of LARIAN FERRELL, and on behalf of survivors, LEROY FERRELL and JULIE FERRELL, | )<br>)<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CASE NO.: 4:21-cv-00397-WS-MAF<br>) |
| FLORIDA DEPARTMENT OF CORRECTIONS, MARK INCH, in his official capacity as Secretary, JOHN DOES 1-5; MILTON HICKS, individually and CENTURION OF FLORIDA, LLC, a health services corporation, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## CENTURION OF FLORIDA, LLC'S MOTION FOR SANCTIONS

Pursuant to Federal Rule of Civil Procedure 11, Defendant Centurion of Florida, LLC ("Centurion") moves for sanctions against Plaintiff Leroy Ferrell ("Plaintiff") and his counsel, Amber Hall, and states as follows:

## INTRODUCTION

On May 18, 2018, Larian Ferrell was murdered by another prisoner while incarcerated in the custody of the Florida Department of Corrections ("FDC"). His death was tragic and there is no doubt Mr. Ferrell's family and friends suffered. But

Plaintiff's grief and search for justice do not entitle him to pursue frivolous claims against innocent parties, like Centurion.

From the outset of litigation, Centurion provided medical records to Plaintiff's counsel detailing the prompt emergency treatment Centurion's medical staff provided to Mr. Ferrell. Plaintiff's counsel persisted with this litigation despite the evidentiary record.

Centurion then retained an expert who opined its medical staff satisfied the standard of care in treating Mr. Ferrell. Despite bringing claims that plainly require expert support, Plaintiff offered *no* evidence the standard of care was violated. Yet Plaintiff's counsel continued to pursue this litigation.

Finally, the parties received the Florida Department of Law Enforcement investigatory report into Mr. Ferrell's murder. The witness statements and video recordings corroborate the evidence already provided to Plaintiff. Still, Plaintiff's counsel persists with this litigation in what now can only be described as bad faith.

After attempts by Centurion to have Plaintiff voluntarily dismiss the frivolous claim against it, Centurion must now ask the Court to do what Plaintiff should have done long ago. Accordingly, Centurion asks the Court to exercise its inherent authority and dismiss Plaintiff's claim as factually and legally frivolous, and to enter an award of attorneys' fees against Plaintiff's counsel.

# BACKGROUND[1]

On May 18, 2019, Mr. Ferrell was murdered by another inmate, Anthony Scott Hannah[2], while incarcerated in FDC's custody at Cross City Correctional Institution ("CCCI").[3]

On May 17, 2021, Plaintiff, through his counsel, filed this lawsuit. ECF No. 5. At the time the lawsuit was filed, Plaintiff's counsel had access to Mr. Ferrell's medical records. Fla. Admin. Code Ann. r. 33-401.701(10)(h) ("In accordance with 45 C.F.R. § 164.502 and Florida law, a personal representative[4] of a deceased inmate shall have access to or may authorize the disclosure of the deceased inmate's protected health information that is relevant to the personal representative's legal authority to act on behalf of the deceased inmate or the deceased inmate's estate.").

Despite the medical records plainly demonstrating otherwise, Plaintiff's counsel alleged Centurion's medical staff "did not respond in a timely manner" and

---

[1] Centurion incorporates the facts from its summary judgment motion filed with this Court on August 31, 2022 (ECF No. 46).

[2] Mr. Hannah was tried and convicted of Mr. Ferrell's murder in Dixie County, Florida. *State v. Hannah*, No. 15-2019-CF-000300 (Fla. 3d Jud. Cir.). Mr. Hannah's conviction is currently on appeal to the First District Court of Appeal. *Id.* at Doc. 108.

[3] Centurion contracted with FDC to provide contractually specified healthcare services to inmates, including those housed at CCCI.

[4] For purposes of this regulation, a "personal representative" includes the "parent of the inmate" if the request is accompanied by "a letter from the person's attorney verifying the person's relationship to the inmate and the absence of a court-appointed representative and self-proved last will." Fla. Admin. Code Ann. r. 33-401.701(10)(h)4. So even if Plaintiff was not a court-appointed personal representative at the time, he still had access to Mr. Ferrell's medical records as Mr. Ferrell's parent.

"failed to respond on an emergency basis." *Id.* at ¶¶ 22–23. Plaintiff's counsel also falsely alleged "[l]ifesaving protocols were not initiated in a timely manner." *Id.* at ¶ 24. And Plaintiff's counsel falsely alleged Mr. Ferrell's life could have been saved if "there [had] been a policy for appropriate medical kits, equipment and devices to be placed in each dorm." *Id.* at ¶ 36.

After being served with the Complaint, Centurion began investigating Plaintiff's claims. On October 22, 2021, Centurion sent Plaintiff's counsel a letter and medical records disproving the allegations in the Complaint. **Ex. A, Safe Harbor Letter and Medical Records.** Those records show medical staff timely and appropriately responded to Mr. Ferrell's medical needs. *Id.* at 4–10. Plaintiff's counsel did not respond to the letter or dismiss the claims against Centurion.

On March 11, 2022, Centurion disclosed correctional medical expert Dr. David Mathis, who opined Centurion's medical staff complied with the standard of care, responded appropriately to Mr. Ferrell's medical needs, and did not cause or contribute to Mr. Ferrell's death. **ECF No. 46-1, Report of Dr. David Mathis**. Plaintiff's counsel did not disclose a medical expert and the deadline for doing so has now passed, so the standard of care and causation opinions of Dr. Mathis are unrebutted. ECF Nos. 22 and 24 (setting Plaintiff's expert disclosure deadline as February 9, 2022), and 33 (extending parties' rebuttal expert disclosure deadline to June 7, 2022).

On June 10, 2022, Plaintiff's counsel filed an Amended Complaint. ECF No. 39. Completely ignoring the unrebutted evidence showing that the standard of care was met and that Centurion did not cause Mr. Ferrell's death, Plaintiff's counsel made identical allegations against Centurion. *Id.* at ¶¶ 20–23, 34.

On July 19, 2022, the parties received the Florida Department of Law Enforcement ("FDLE") report into Mr. Ferrell's death. This included video recordings showing the timely medical treatment provided to Mr. Ferrell, which corroborated the medical records provided in October 2021. **ECF No. 46-2, Handheld Video (filed under seal)**.

Despite the overwhelming and unrebutted evidence that Centurion satisfied the standard of care and did not cause Mr. Ferrell's death, Plaintiff's counsel refused to dismiss Centurion. Instead, Plaintiff's counsel propounded largely irrelevant written discovery on Centurion on the last day to do so before the discovery deadline passed. **Ex. B, Plaintiff's First Interrogatories to Centurion**. More than a week later, Plaintiff's counsel requested the deposition of Centurion's corporate representative for the first time, with only three weeks left in the discovery period.

In a last-ditch effort to avoid the filing of this Motion, Centurion provided a copy of it to Plaintiff's counsel on **August 17, 2022**. **Ex. C, Second Safe Harbor Letter**. Plaintiff's counsel refused to dismiss the frivolous claim against Centurion.

5

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 11(c) empowers the court to grant sanctions against a party or its attorney for frivolous filings. Fed. R. Civ. P. 11(c)(1) ("the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."). "The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). "The rule requires that an attorney or unrepresented party filing a pleading certify that the filing is not presented 'for any improper purpose,' such as 'to harass ... or needlessly increase the cost of litigation' and that 'factual contentions have evidentiary support.'" *Powrzanas v. Jones Util. & Contracting Co.*, 834 F. App'x 500, 507 (11th Cir. 2020).

To effectuate this purpose, Rule 11 "stresses the need for some prefiling inquiry." *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992) (quoting *Donaldson v. Clark,* 819 F.2d 1551, 1555 (11th Cir. 1987)) (cleaned up). "The reasonableness of the prefiling inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the underlying facts; and whether the paper was based on a plausible view of the law." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995). "If the attorney failed to make a reasonable inquiry, then the court

must impose sanctions despite the attorney's good faith belief that the claims were sound." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). And "Rule 11 emphasizes an attorney's continuing obligation to make inquiries, and thus the rule allows sanctions when an attorney continues 'insisting upon a position after it is no longer tenable.'" *Battles v. City of Ft. Myers*, 127 F.3d 1298, 1300 (11th Cir. 1997).

In considering Rule 11 sanctions, the questions before the Court are: ""(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Peer*, 606 F.3d at 1311. In answering these questions, "[t]he district court must 'determine whether a reasonable [party] in like circumstances could believe his actions were factually and legally justified.'" *Vient v. Highlands News-Sun*, 829 F. App'x 407, 409 (11th Cir. 2020) (quoting *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003)). So this "objective standard for assessing conduct under Rule 11 is reasonableness under the circumstances and what it was reasonable to believe at the time the pleading was submitted." *EMI Sun Vill., Inc. v. Catledge*, 779 F. App'x 627, 639 (11th Cir. 2019).

In doing so, "[t]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Peer*, 606 F.3d at 1311.

While the Court should consider what was known when a filing was made, "The commentary specifically notes that 'if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.'" *Id.*

Finally, "[s]anctions are warranted when a party exhibits a deliberate indifference to obvious facts, but not when the party's evidence to support a claim is merely weak." *EMI Sun Vill., Inc. v. Catledge*, 779 F. App'x 627, 639 (11th Cir. 2019).

## **ARGUMENT**

The Court should enter sanctions against Plaintiff and his counsel, including dismissal of the claim against Centurion and an award of reasonably incurred attorneys' fees against his counsel, because Plaintiff's claim is—and always has been—frivolous.

That the allegations against Centurion were factually frivolous was evident from day one had Plaintiff's counsel conducted the requisite inquiry before filing suit. Fed. R. Civ. P 11(b). After his death, Plaintiff and his counsel had access to Mr. Ferrell's medical records. Fla. Admin. Code Ann. r. 33-401.701(10)(h). When alleging inadequate medical treatment, a reasonable inquiry includes, at a minimum, reviewing the records of the treatment provided. *Ellis v. Beemiller, Inc.*, 287 F.R.D. 326, 338 (W.D. Pa. 2012) (concluding Rule 11 reasonable inquiry requirement was

violated where medical record refuted allegations in complaint that shrapnel went through plaintiff's hand). Plaintiff and his counsel also had years in which to have an autopsy performed or to have an expert review the medical treatment provided to Mr. Ferrell, as a news article reveals Plaintiff's counsel's involvement with this case as far back as June 2019—just a month after Mr. Ferrell's death and nearly two years before this lawsuit was filed. St. Clair Murraine, *Ferrell still aching from son's stabbing in prison, family wants answers*, Capital Outlook (June 20, 2019) (available at http://capitaloutlook.com/site/ferrell-still-aching-from-sons-stabbing-in-prison-family-wants-answers/). Based on Plaintiff's counsel's involvement with the case in June 2019, Centurion is unaware of any facts suggesting Plaintiff's counsel was somehow prevented from conducting a reasonable inquiry before filing this lawsuit in May 2021. *Donaldson*, 819 F.2d at 1556 (listing factors to consider in whether an attorney had ability to conduct presuit inquiry).

So based on the allegations in the Complaint (ECF No. 5), Plaintiff's counsel either failed to conduct a reasonable presuit inquiry into the claims against Centurion, or she ignored the evidence from the medical records. Plaintiff's counsel's willful ignorance of the facts does not permit the pursuit of frivolous claims. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (holding "deliberate indifference to obvious facts" warrants sanctions under Rule 11); *Schneider v. Walmart Stores, Inc.*, No. 5:09-CV-314/RS-MD, 2010 WL

11509046, at *3 (N.D. Fla. Jan. 13, 2010) (entering Rule 11 sanctions where plaintiff's attorney was willfully ignorant of the facts of the underlying incident).

But even if Plaintiff's counsel's failure to conduct a reasonable presuit inquiry—including reviewing medical records—could be excused, there is no basis to excuse her continued pursuit of the claims against Centurion after she was provided medical records on October 22, 2021. Ex. A. The records detailed the prompt treatment medical staff provided to Mr. Ferrell, which the unrebutted evidence demonstrates satisfied the standard of care. **ECF No. 46-1, Report of Dr. David Mathis**. There has never been any insinuation—much less evidence—such records are inaccurate. So by October 22, 2021, at the very latest, Plaintiff's counsel knew there was no wrongdoing by Centurion's medical staff, but she continued to pursue the claim against Centurion despite the lack of any evidence of wrongdoing. The continued pursuit of the claims, despite the contrary evidence, violates Rule 11. *Mike Ousley Prods., Inc.*, 952 F.2d at 382–83 (affirming Rule 11 sanctions where, following attorney's failure to conduct presuit inquiry, information received during litigation provided notice claims were factually frivolous).

Further, as of March 2022, Plaintiff's counsel knew Centurion's medical staff had satisfied the standard of care and had not caused or contributed to Mr. Ferrell's

death based on the expert report of Dr. David Mathis.[5] **ECF No. 46-1, Report of Dr. David Mathis**. Because the unrebutted evidence demonstrated the standard of care was satisfied, Plaintiff's deliberate indifference claim was legally frivolous. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (noting an Eighth Amendment claim will not lie "absent evidence that [the prisoner's medical treatment] violates professional standards of care."); *Johnson v. Kats-Kagan*, No. 5:06CV92RSMD, 2007 WL 2176004, at *4–5 (N.D. Fla. July 25, 2007), *aff'd sub nom. Johnson v. McNeil*, 278 F. App'x 866 (11th Cir. 2008) (explaining summary judgment is required when a plaintiff "has made no effort to support h[is] allegations with a medical opinion").

Yet in spite of the unrebutted evidence proving Centurion is not liable for deliberate indifference—including medical records, standard of care opinions, causation opinions, FDC video recordings, and an FDLE report and investigatory materials—Plaintiff's counsel still refuses to dismiss the factually and legally frivolous claim against Centurion. To the contrary, Plaintiff's counsel has doubled down, propounding largely irrelevant written discovery on Centurion on the last possible day to propound discovery, Ex. B; and requesting Centurion's corporate representative deposition just three weeks before the discovery deadline.

---

[5] Indeed, in the more than three years since Mr. Ferrell's passing, not a single expert has found fault with the medical care provided to Mr. Ferrell.

As the evidence shows, Plaintiff's counsel should never have sued Centurion because there is no evidence of any wrongdoing. Plaintiff's counsel's failure to obtain any evidence that Centurion's medical staff violated the standard of care, despite litigating this case for nearly a year, required her to dismiss the obviously frivolous claim. *Peer*, 606 F.3d at 1311 ("The commentary specifically notes that 'if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.'"); *Battles*, 127 F.3d at 1300 (affirming Rule 11 sanctions where attorney failed to procure evidence to support claim but continued with litigation). So Plaintiff and his counsel's repeated refusal to dismiss the claim against Centurion violates Rule 11. *Id.*

## **CONCLUSION**

Mr. Ferrell's murder is tragic. But the fact that he died is an insufficient basis upon which to sue Centurion—especially in light of the unrebutted evidence that his medical treatment satisfied the standard of care. Accordingly, the Court should sanction Plaintiff and his counsel by (1) dismissing the claim against Centurion with prejudice and (2) order Plaintiff's counsel to pay Centurion's reasonable attorneys' fees incurred for defending against this frivolous suit.

Dated: September 8, 2022.                Respectfully Submitted,

/s/ Brian Wahl
Brian A. Wahl (Fla. Bar No. 95777)
BRADLEY ARANT BOULT CUMMINGS LLP
1819 5th Avenue N. – One Federal Place
Birmingham, AL 35203
Telephone: (205) 521-8800
Fax: (205) 521-8800
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

Jacob Hanson (Fla. Bar No. 91453)
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, FL 33602
Telephone: (813) 559-5500
Fax: (813) 229-5946
Primary Email: jhanson@bradley.com
Secondary Email: tabennett@bradley.com
Secondary Email: tbush@bradley.com
Secondary Email: sdhayes@bradley.com

*Counsel for Defendant Centurion of Florida, LLC*

**LOCAL RULE 7.1(F) CERTIFICATION**

Pursuant to Local Rule 7.1(F), undersigned counsel certifies that this motion and memorandum contains 2,630 words according to the word processing software used to create this motion.

## LOCAL RULE 7.1(C) CERTIFICATION

Pursuant to Local Rule 7.1(C), undersigned counsel certifies that he has conferred with Plaintiff's counsel regarding the relief sought in this motion. Plaintiff opposes the motion in its entirety.

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure 5 and 11, I hereby certify that on September 8, 2022, I served the foregoing on counsel of record for Plaintiff.

/s/ *Brian Wahl*
Brian A. Wahl